UNIVERSAL C. I. T. CREDIT CORPORATION V. J. B. DANIEL.

No. A-3211. Decided October 31, 1951.
(243 S. W., 2d Series, 154.)

**514**

*Forrester Hancock* and *Ralph E. Hartman,* both of Waxahachie, *J. C. Lazar,* of New York City, and *Dan Moody,* of Austin, for petitioner.

The Court of Civil Appeals erred in holding that the contract styled "Retail Dealers Protective Agreement" was ambiguous and ought to be construed to mean that the parties intended that the respondent (Daniel) did not obligate himself to repurchase the automobile sold to Spann upon his default in making monthly payments of the purchase price. Citizens Natl. Bank v. Texas & Pac. Ry. Co., 136 Texas 333, 150 S.W. 2d 1003; Securities Inv. Corp. v. Noltze, 222 Iowa 678, 269 N. W. 866; Midwest Com. Cr. Co. v. Meyers, 251 Mich. 16, 231 N.W. 49.

*Lynn B. Griffith,* of Waxahachie, for respondent.

Because the contract is ambiguous and contained different clauses that are contradictory it is void. Whittington v. Cameron Compress, 268 S.W. 216; Magnolia Petroleum Co., v. Aiken, 289 S.W. 152; Somerset Pipe Line Co. v. Pioneer Oil & Refining Co., 289 S.W. 155.

MR. JUSTICE CALVERT delivered the opinion of the Court.

Under date of October 21, 1948, respondent, J. B. Daniel, then doing business as an automobile dealer in Waxahachie, Texas, entered into a written contract with petitioner, Universal C.I.T. Credit Corporation, under the terms of which respondent agreed to sell to petitioner acceptable paper covering new and used cars.

The contract is headed "Retail Protection Agreement For

Automobile Dealers" and is set out in full as a footnote to the opinion of the Court of Civil Appeals. The parties seem to agree that only paragraphs 1, 2 and 3 and part of paragraph 7 have any pertinency here. These sections read as follows:

1. You propose to buy from us, on the basis stated in this agreement, paper acceptable to you covering new and used cars; except as provided in this agreement said paper will be assigned to you without recourse as to the customer's obligation of payment, except that paper covering commercial cars used for long distance hauling, commercial cars of more than two tons capacity, busses, cars used for taxi, jitney, or 'drive-yourself' service, cars sold to relatives or employees, or where otherwise specifically agreed upon, will bear our full recourse endorsement; in such cases you may make any necessary correction in our endorsement and paragraph 2 and 3 shall not apply.

2. We will purchase from you each repossessed or recovered car tendered at our place of business within 90 days after maturity of the earliest installment still unpaid. The purchase price payable on demand shall be the unpaid balance due on the car, limited as stated in paragraph 3. Until paying you we will store the car at our risk and expense and as your property and will deliver it to you on demand.

3. We shall have no responsibility as to converted or confiscated cars until they are repossessed or recovered and tendered as above. You will allow us the cost of repairing actual direct collision damage necessitating repossession; the allowance is not to exceed the unpaid balance on the car after deducting both the 'as is' value and the amount of any deferred certificate or other special holdback relating to the car. Where the resale value of the repaired car (excluding overhead and salesman's commissions) exceeds the unpaid balance, the excess will be deducted from the collision allowance.

\*    \*    \*    \*    \*    \*

7. \* \* \* We will be under full recourse liability to you on the assignment of paper covering equipment other than described in paragraph 1 above notwithstanding the language of such assignment \* \* \*. In case we fail to purchase repossessed cars we will be responsible for any deficiency incurred by you in the resale of such repossessed cars at public or private sale held with or without notice, at which you may purchase."

On December 21, 1948, respondent sold to one R. D. Spann a Hudson automobile, taking in part payment therefor Spann's

installment note, secured by chattel mortgage. On the same day respondent sold and assigned Spann's note and mortgage to petitioner "without recourse as to customer's obligation of payment." Spann, having thereafter defaulted in the payment of installments due on his note, delivered the automobile to petitioner, and petitioner, after calling upon respondent to purchase the car at a price equal to the unpaid balance due on the note, with respondent refusing, sold the automobile at public auction for the sum of $1,000. Petitioner, as plaintiff, then instituted this suit to recover from respondent, as defendant, damages in a sum equal to the unpaid balance due on the note plus certain expenses, less $1,000. A trial before the court without the intervention of a jury resulted in a judgment for plaintiff. The judgment of the trial court was reversed and judgment was rendered by the Court of Civil Appeals that plaintiff take nothing. 238 S.W. 2d 727.

It is the position of the petitioner that as to those cars on which the paper was sold to petitioner "without recourse" the provisions of paragraph 2 of the written contract obligated respondent to purchase from petitioner all repossessed cars tendered to him within the 90 day period at a price equal to the unpaid balance due on the car. It is the position of respondent, fortified by the opinion of the Court of Civil Appeals, that the contract is ambiguous, and should be construed most strongly against petitioner who wrote it; that so construing it. the contract imposes on respondent no personal obligation to pay any sum to petitioner on that paper endorsed without recourse.

We come then to an interpretation of the contract. Paragraph 2 of the contract is plain, clear and unambiguous. By its terms respondent agreed unequivocally to purchase from petitioner all repossessed or recovered cars at a price equal to the unpaid balance due thereon. However, paragraph 1 specifically provides that paragraph 2 shall not apply in certain cases. What are the cases in which paragraph 2 shall not apply? It is here that the language of the contract is of doubtful meaning. It must be conceded that there is an absence of artistry in the grammatical construction and punctuation of paragraph 1 of the contract, but is its meaning when properly read and interpreted so dubious as to subject the contract to the charge of ambiguity, thereby justifying the court in calling into play the rule of strong construction against the author of an instrument? We think not.

■ In the law texts and court decisions will be found a plethora

of definitions of the words "ambiguous" and "ambiguity" and of tests for determining whether instruments are ambiguous. See Webster's Dictionary, 3 Words & Phrases, Black's Law Dictionary, 17 Corpus Juris Secundum 685, and 12 American Jurisprudence 751. Some examples from Texas courts may be seen in Tom v. Roberson, Tex. Civ. App., 182 S.W. 698 (writ ref.) ; San Antonio Life Ins. Co. v. Griffith, Tex. Civ. App., 185 S.W. 335; Jarecki Mfg. Co. v. Hinds, Tex. Civ. App., 295 S.W. 274, writ dism., Id. 6 S.W. 2d 343; City Inv. & Loan Co. et al v. Wichita Hardware Co., Tex. Civ. App., 57 S.W. 2d 222, reversed 127 Texas 44, 91 S.W. 2d 683. The words are often used to denote a simple lack of clarity in language but that is not the sense in which we use them here.

In a fairly recent case this court said that "if a written contract is so worded that it can be given a certain or definite legal meaning or interpretation, it is not ambiguous." Lewis et al v. East Texas Finance Co. et al 136 Texas 149, 146 S.W. 2d 977, 980. To the same effect, see Remington Rand Inc. v. Sugarland Industries, Com. App., 137 Texas 409, 153 S.W. 2d 477, 483 and Rachford v. Stewart Title Guaranty Co., Tex. Civ. App., 160 S.W. 2d 985, 987, writ ref. w.o.m. The converse of this is that a contract is ambiguous only when the application of pertinent rules of interpretation to the face of the instrument leaves it genuinely uncertain which one of two or more meanings is the proper meaning. For this very statement of the rule, see the Kansas cases of Roxana Petroleum Corp. v. Jarvis, 127 Kan. 365, 273 P. 661, 665 and Barker v. Lashbrook, 128 Kan. 595, 279 P. 12, 13. In other words, if after applying established rules of interpretation to the contract it remains reasonably susceptible to more than one meaning it is ambiguous, but if only one reasonable meaning clearly emerges it is not ambiguous. In the latter event the contract will be enforced as written and parol evidence will not be received for the purpose of creating an ambiguity or to give the contract a meaning different from that which its language imports. Lewis et al East Texas Finance Co. et al, supra; 10 Tex. Jur. 279, sec. 163. Neither in this latter event may the rule of strong construction against the author be invoked. That rule is applied only where a contract is open to two reasonable constructions. Amory M'f'g. Co. v. Gulf C. & S. F. Ry. Co., 89 Texas 419, 37 S.W. 856, 857. In 12 Amer. Juris., at page 796 it is said: "The rule that expressions will be interpreted against the person using them applies only where, after the ordinary rules of interpretation have been applied, the agreement is still ambiguous."

■ In the interpretation of contracts, whether they be ambiguous in the sense that that term is here defined or simply contain language of doubtful meaning, the primary concern of the courts is to ascertain and to give effect to the true intention of the parties. To achieve this object the courts will examine and consider the entire writing, seking as best they can to harmonize and to give effect to all the provisions of the contract so that none will be rendered meaningless. With these rules of interpretation in mind let us examine the contract before us.

It is apparent from paragraph 1 that the agreement for the purchase by petitioner of paper covering new and used cars contemplated the purchase of two types or classes of paper, that to be assigned to petitioner by respondent "without recourse as to the customer's obligation of payment" and that to be assigned with "full recourse endorsement," this latter type to include paper on commercial cars used for long distance hauling, commercial cars of more than two-ton capacity, busses, cars used for taxi, jitney, or drive-yourself service, and cars sold to relatives or employees. The two clauses describing the classes of paper to be dealt with in the contract are preceded by a semicolon, separated by a comma, and followed by a semicolon, following which is the provision that "in such cases you may make any necessary correction in our endorsement and paragraphs 2 and 3 shall not apply." The wording and the punctuation of section 1 is such that it is not clear from the language of that section standing alone whether the phrase "in such cases" was intended to refer to the "without recourse" paper, or the "with recourse" paper, or both. It was this obscurity in the meaning of the phrase "in such cases" that prompted the Court of Civil Appeals to declare the contract ambiguous.

The Court of Civil Appeals indicated the possibility that the phrase "in such cases" was intended by the parties to refer to both classes of paper. To so interpret the phrase would be to render paragraphs 2 and 3 meaningless and to read them out of the contract entirely. Certainly it was not the intention of the parties that these two paragraphs, detailing, as they do, major responsibilities of the parties toward each other in dealing with repossessed cars, should have no meaning whatever. We cannot accept as reasonable an interpretation of the contract under which the phrase "in such cases" would refer to both classes of paper.

The Court of Civil Appeals thought it more likely, and held,

that the parties intended the phrase "in such cases" to refer to that class of paper first mentioned in paragraph 1 of the contract which was to be endorsed without recourse. If the contract be so interpreted then by the very language that follows the words "in such cases" the petitioner was authorized to "make any necessary correction" in respondent's endorsement. Can it reasonably be thought that the parties intended that petitioner should have authority to "correct" respondent's "without recourse" endorsement? If such is the proper interpretation it would seem to infer that petitioner might change respondent's "without recourse" endorsement to a "full recourse" endorsement. Surely the parties had no such intent. Moreover, if the words "in such cases" are held to refer to the "without recourse" paper it then follows from the remaining language of the sentence that paragraphs 2 and 3 would not apply when dealing with paper endorsed "without recourse". This being true, for paragraphs 2 and 3 to have any meaning whatever they would apply when dealing with paper bearing respondent's "full recourse endorsement." But this interpretation can hardly be said to be reasonable. The net result of this interpretation would be to say that although petitioner was already fully protected by respondent's guaranty of payment through his endorsement with full recourse, the parties nevertheless intended to provide petitioner with another guaranty from the same person but with a less efficacious remedy in case of default of the maker. The petitioner, being fully protected by respondent's endorsement of the second class of paper, could have had no interest in a further provision binding respondent to pay the amount due on that class of paper only after the car involved had been repossessed and tendered to respondent at his place of business. We do not regard it as a reasonable interpretation of the contract to say that the parties intended the words "in such cases" to refer to the class of paper which bore respondent's endorsement without recourse.

If the words "in such cases" be held to refer to the class of paper endorsed with "full recourse" none of the contract provisions are rendered meaningless and the entire contract takes on meaning and becomes harmonious. So interpreted, the contract will provide that petitioner may make any necessary correction in respondent's endorsement of the "with recourse" paper so as to show that it is endorsed with recourse. So interpreted, the provision for correction of endorsement becomes meaningful. If the words be so interpreted then paragraphs 2 and 3 would not apply when dealing with paper endorsed with full recourse, as to which there is otherwise an adequate guar-

anty by endorsement and an efficacious remedy, but would apply when dealing with paper endorsed "without recourse", as to which the petitioner would otherwise have no remedy save its right to repossess and sell the car and pursue the maker personally for the balance.

It is the contention of respondent, approved by the Court of Civil Appeals, that to hold that the words "in such cases" refer to the second class or "with recourse" paper leads to an unreasonable result in that whereas respondent endorsed the first class of paper "without recourse" the application of paragraph 2 to that class of paper renders respondent's liability thereon the same, for all practical purposes, as that of an endorser with recourse. This, said the Court of Civil Appeals, would be "a technical distinction which is without any substantial difference in so far as legal consquences are concerned." The court added that under this interpretation liability in either event would be contingent upon the same ultimate event and the amount thereof would be substantially the same. We cannot agree that this necessarily follows.

The event which would render respondent liable to petitioner on a note endorsed with recourse would be the default of the maker of the note while the event which would render respondent liable on a note endorsed without recourse would be the repossession of the car by petitioner and the tender thereof within a 90-day period to respondent at its place of business.

There could also be a substantial difference in the amount of respondent's liability on an endorsement with recourse and the amount thereof on an endorsement without recourse under the interpretation we have placed on the contract. If the car should be confiscated or converted and placed beyond the reach of petitioner, respondent would be under no liability whatever on paper endorsed without recourse but would be liable for the full amount of the note where endorsed with recourse. If the car, as a result of a collision, should be in a damaged condition necessitating repossession, the amount of respondent's liability would be reduced to the extent provided in paragraph 3 if the paper was endorsed without recourse but there would be no reduction or allowance for repairs if the paper was endorsed with recourse.

■ Respondent urges that the first part of paragraph 7 shows the contract to be ambiguous since the language thereof indicates that some type of equipment is described in paragraph

1 of the contract whereas paragraph 1 contains no description whatever of equipment. We agree with respondent that the discrepancy mentioned does in fact exist but we cannot agree that this discrepancy renders the contract ambiguous in so far as the obligations of the parties with respect to the subject matter of this suit are concerned. Lone Star Gas Co. v. X-Ray Gas Co. et al, 139 Texas 546, 164 S.W. 2d 504.

■ From what we have said it follows that in our opinion the contract before us as applied to the subject matter of this suit is reasonably susceptible to only one meaning. That meaning is that the parties in dealing with "without recourse" paper intended that respondent should pay to petitioner an amount equal to the unpaid balance due on repossessed cars when such cars were timely tendered to respondent.

We can see nothing inherently oppressive or wicked in this contract as we have interpreted it. Both parties were competent to contract and appear to have dealt with each other voluntarily and at arm's length. There is no pleading or proof by respondent of fraud or overreaching by petitioner, or that the provision which now appears to respondent to be unduly onerous was inserted in the contract by mistake. A reading of the many cases cited by petitioner, unnecessary to list here, will reflect that refinancing contracts of similar nature and imposing almost identical repurchase obligations on automobile dealers have been in use and before the courts in the states of Arkansas, Arizona, Florida, Georgia, Iowa, Michigan, New York, Pennsylvania, South Carolina and Washington. In none of the cited cases involving rights and obligations arising under such contracts was their validity questioned.

The judgment of the Court of Civil Appeals is reversed and the judgment of the trial court is affirmed.

Opinion delivered October 31, 1951.

No rehearing.