**J. B. MARION, d/b/a J. B. Marion & Company, Appellant,**

v.

**Aubrey Lee SHAVER et al., Appellees.**

**No. 7283.**

Court of Civil Appeals of Texas.

Amarillo.

Sept. 23, 1963.

Rehearing Denied Oct. 21, 1963.

Edward W. Napier, Lubbock, for appellant.

Shaver, Hurley & Sowder, Lubbock, for appellees.

CHAPMAN, Justice.

This is an appeal from a judgment based upon a jury verdict for Aubrey Lee Shaver and Richard G. Shaver against J. B. Marion d/b/a J. B. Marion & Company.

Appellant, during the period material to this case, was a cotton broker engaged in buying cotton from farmers and selling it to cotton mills, other cotton brokers and generally into the world market. He entered into a written contract with appellees to purchase all cotton grown on their 116 acres of cotton land in Swisher County for the year 1961 at the agreed price of 30.25 cents per pound according to the compress weights. The contract was prepared by appellant and obligated appellees to gin the cotton through Continental and Moss cleaners and deliver it as soon as possible after ginning. There was no date whatever stated in the contract as to when it was to be gathered or ginned, no requirement as to grade or staple, and the con-

**702**

tract provided the cotton was to be machine harvested only.

The court asked the jury if plaintiffs " * * * used ordinary care in the harvesting of the 113 bales of cotton." They answered affirmatively.

Though appellant now complains by brief that the issue should have included an inquiry as to the time of harvest and contends time was of the essence in the contract, there was not a word in the contract he himself prepared obligating appellees to gather the cotton by any particular date.

The provision that appellees were to gather all the cotton by machine only would suggest a liberal construction as to the time of harvest because of the variables involved in gathering irrigated cotton by stripping. There is probative evidence showing that cotton in the same field, the same age, watered at the same time would vary considerably in the time it would mature because of the difference in the slope of the land, the difference in the type of the cotton and various other factors.

It is axiomatic that stripped cotton would not be ready for harvest until most of the late maturing bolls were ready, since a stripping machine does not have the ability to distinguish between mature and immature bolls, but takes everything. There is also testimony that it sometimes takes two or three weeks for cotton to be ready for stripping after a killing frost or freeze. The climatological chart and testimony in connection therewith introduced by appellant shows the low temperature for October, 1961, was 35. The probative evidence shows there was not a killing freeze or frost until the first week in November. The testimony shows appellees started harvesting on November 29. The record also shows appellant's agent knew they were still watering as late as August 14.

■ Since the only time element provided in the contract was delivery as soon as possible after harvest and there were no

specific objections to failure to ask that particular question, or requested issues separating that question from the time of harvest, there could be no reversible error in such failure. Additionally, there is no probative evidence that plaintiffs unreasonably delayed delivery of the cotton after harvest before it was rejected.

 The contract between the parties being unambiguous, they were bound by its written terms. Universal C.I.T. Credit Corporation v. Daniel, 150 Tex. 513, 243 S.W.2d 154.

Finding no reversible error, the judgment of the trial court is in all things affirmed.