**Curtis C. HEAD, Appellant,**

v.

**Raymond THOMASON, Jr., Appellee.**

No. 4239.

Court of Civil Appeals of Texas.

Eastland.

June 28, 1968.

Rehearing Denied July 19, 1968.

J. R. Black, Jr., Scarborough, Black, Tarpley & Scarborough, Abilene, for appellant.

Robert D. Grisham, J. Henry Doscher, Abilene, for appellee.

WALTER, Justice.

Curtis C. Head filed suit against Raymond Thomason, Jr., the developer of River Oaks Addition to the City of Abilene, Texas, for a declaratory judgment. Head owns Lot 202, Block A, Section 1, River Oaks Addition. He contracted to sell the lot provided the purchaser's plans for a house were approved by the developer. The prospective purchaser's plans were not approved. Mr. Head sought a judgment that such plans did not violate the building

restrictions of the addition and an order that such plans be approved.

In a non jury trial, judgment was rendered for the defendant and the plaintiff has appealed. The record shows that the developer of River Oaks sold lots 1 and 2 of Block "A", Section 1, to E. P. "Dock" Mead. Mr. Mead sold the south 125 feet of Lot 2 to Dale Ackers who constructed a home thereon. Lot number 1 had a frontage of 195 feet on River Oaks Road and Lot 2 had a frontage of 175 feet on River Oaks Road. After the sale to Ackers, Mead owned all of Lot 1 and the north 50 feet of Lot 2. After his death, Mead's heirs re-platted this property into Lots 103 and 104. George Yonge, trustee, became the owner of this property in 1965. Head purchased from Yonge and re-platted the land into Lots 201 and 202. Head erected his home on Lot 201, consisting of the north 140 feet of original Lot 1. Lot 202, under the Head re-platt, consists of the north 50 feet or original Lot 2 and south 55 feet of original Lot 1. Lot 202 of Head's re-platt is part of original Lot 1 and 2 and has frontage on River Oaks of 105 feet.

Paragraphs 4 and 5 of the restrictions to River Oaks are as follows:

"4. Only one residence shall be constructed on each lot; however, this shall not prohibit the construction of a residence on a portion of one or more lots as shown by said map, provided such tract constitutes a homesite as defined in the succeeding paragraph.

5. Parts of one or more adjoining lots facing the same street in the same block may be designated as one homesite provided the lot frontage shall not be less than a minimum frontage of 100 feet."

Appellee contends that Kayem v. Stuckey, 383 S.W.2d 227 (Tex.Civ.App. writ ref. n.' r. e.), is directly in point and supports the judgment. The defendants in Stuckey were seeking to divide Lots 5, 7, and 8 as platted into four lots and build on each, or as the court said, "* * * squeeze in an additional building site on the 3 platted lots." The court in Stuckey said:

"We disagree with defendants' contentions. The restrictions recite that the Lacy Meadows addition had been subdivided as shown by the plat; that the addition was to be subjected to uniform building and usage restrictions; and that the restrictions were imposed for the benefit of every purchaser and were imposed upon each site or parcel of land in the subdivision. Paragraph 12 then recites that 'only one single family residence shall be constructed or permitted on each site or separate parcel of land hereafter conveyed out of said subdivision.'"

"Paragraph 16 provides for consolidation of adjoining tracts or fractions thereof into one homesite, but does not in any way allow more than one residence on any one lot. (The balance of the restrictions are inapplicable here.)

We must construe the restrictions in the light of the obvious intent of the plan for development of the subdivision. To us it is clear that only one single residence and its usual accessories would be permitted on each lot of the subdivision as shown by the plat. We think 'each site or separate parcel of land' as stated in paragraph 12 of the restrictions, obviously means each lot of the subdivision. The only sites or tracts shown on the plat are the lots of the subdivision. * * *"

The reason we do not believe Stuckey controls this case is because the restrictions are different.

When viewed in the light of the appropriate rules of construction in such cases, we cannot say that the River Oaks restrictions prohibit Head or his successors from constructing a residence on Lot number 202.

In Universal C. I. T. Credit Corp. v. Daniel, 150 Tex. 513, 243 S.W.2d 154, (1951), the court said:

"In other words, if after applying established rules of interpretation to the con-

tract it remains reasonably susceptible to more than one meaning it is ambiguous, but if only one reasonable meaning clearly emerges it is not ambiguous."

In Johnson v. Wellborn, 181 S.W.2d 839 (Tex.Civ.App. writ ref., 1944), the court said:

"The restriction must be enforced as written and can not be stretched, enlarged, extended or changed by construction."

"It is also settled that restrictive covenants are to be construed strictly against the persons seeking to enforce them, and all doubt must be resolved in favor of natural rights and a free use of property and against restrictions."

Paragraph 4 of the restrictions expressly provides that: "Only one residence shall be constructed on each lot." However, this restriction is followed by the statement, "however this shall not prohibit the construction of a residence on a portion of one or more lots—" provided "such tract constitutes a homesite as defined in the succeeding paragraph." The record exclusively establishes that Mr. Head's Lot has a frontage of over 100 feet on River Oaks Road and constitutes a homesite. As we interpret the restrictions Mr. Head, or his assigns, are entitled to erect a residence on Lot 202. The record reveals the reason the developer refused to approve the plans was:

"Since there is an existing house on the original Lot 2, the recognition of this Lot 202, and the approval of these plans, would constitute the approval of the creation of an additional homesite over and above the number originally platted."

"I have no other objections to the plans, but do not feel that I should expose either Mrs. Cole or myself to the possibility of the consequences of the Houston case."

The judgment provides:

"—it is the opinion of the Court and the Court finds that the recorded plat, dedication and restrictive covenants which control development of, and construction within Section One (1), River Oaks, an addition to the City of Abilene, Taylor County, Texas, prohibit the construction of more than one residence on each lot, permit the designation of parts of one or more adjoining lots facing the same street as one homesite, but do not permit the designation of a greater number of homesites than the number of originally platted lots, and the Plaintiff's attempted designation of Lot 202 Block 'A', Section One (1), River Oaks, an addition to the City of Abilene, Taylor County, Texas, as a homesite, constitutes a designation of a third homesite out of two originally platted lots, in violation of the recorded plat, dedication and restrictive covenants."

Paragraph 12 of the restrictions gives the developer certain discretionary powers to determine the adequacy of the plot plan and the proposed homesite.

Appellee contends, "Therefore, the action of the Appellee in disapproving the proposed homesite involving the Appellant and Mrs. Cole was reasonable in the light of the powers reserved to Appellee in Paragraph 12 of the restrictions. This would necessarily be presumed by the trial court's action in denying Appellant any relief." This contention cannot be sustained because the letter of the developer and the judgment expressly set out the reason for not approving such plans.

The judgment is reversed and judgment is rendered for the appellant.

GRISSOM, C. J., dissents.