**Janie B. LOPEZ, Appellant,**

v.

**Aida LOPEZ, Appellee.**

No. 8547.

Court of Civil Appeals of Texas, Beaumont.

July 10, 1980.

Rehearing Denied Aug. 14, 1980.

---

Peter Steiner, Corpus Christi, for appellant.

John A. Sixta, Jr., Corpus Christi, for appellee.

KEITH, Justice.

This is an appeal from a judgment entered in an interpleader suit filed by The Prudential Insurance Company of America. On July 8, 1975, Leonardo G. Lopez, a veteran of the United States Army, applied in writing through the Office of Servicemen's Group Life Insurance of the Prudential Insurance Company for a policy of Veteran's Group Life Insurance in the principal sum of $15,000. The application was upon a form supplied by the insurer and, upon the basis of such application, a policy was issued and was in full force and effect at the time of the death of the insured on or about August 3, 1977.

The insured was murdered but the law enforcement officers had not, at the time of the trial, filed charges against any person for such offense, although there were suspicions that the deceased's widow might have been involved in the homicide. In any event, after the widow, our appellant, had made demand for the payment of the face of the policy, the insurer filed its bill in interpleader and tendered the proceeds of the policy and unearned premiums into the registry of the court. Upon its motion for summary judgment, it was discharged of all liability and the claimants were ordered to litigate to determine who was entitled to such proceeds.

The insurer named as claimants the widow, Janie B. Lopez, and two daughters born of the marriage between Leonardo and Janie B. Lopez; namely, Aida B. Lopez and Lucy Lopez, the latter being a minor.[1]

The trial court, upon stipulation of the parties, found that there was no ambiguity in the application for the policy; and, upon such finding, entered judgment for the daughter Aida against the widow Janie. We will speak of the widow/appellant as Janie and the daughter/appellee as Aida.

The dispute centers around the application form attached to the policy wherein the deceased listed the beneficiaries of his policy in substantially the following form:

---

1. A guardian ad litem was appointed for Lucy but it developed that she had married before suit was filed and, upon such proof, the guardian ad litem was discharged. However, Lucy never made a claim for the proceeds and she is no longer involved in the litigation.

I DESIGNATE THE FOLLOWING BENEFICIARIES TO RECEIVE PAYMENT OF MY INSURANCE PROCEEDS AS SHOWN BELOW:

| COMPLETE NAME AND ADDRESS OF EACH BENEFICIARY | RELATIONSHIP TO INSURED | SHARE TO EACH BENEFICIARY (Fractions such as ½, ⅔)[2] |
|---|---|---|
| PRINCIPAL (First) | | |
| Janie B. Lopez [address immaterial] | wife | 0 |
| CONTINGENT | | |
| Aida B. Lopez [address immaterial] | daughter | |

---

Janie appeals contending that the court erred in its interpretation of the language in the application which resulted in the award of the proceeds of the policy to Aida. Counsel has filed a scholarly brief wherein literally dozens of cases and texts are cited setting forth the rules of construction of insurance contracts and the applications for the issuance thereof. After setting out the applicable rules, Janie's counsel used this language to state his contention:

"In light of the foregoing authorities, the Appellant believes that the Trial Court reached an absurd result by placing all its emphasis on one symbol in the Application. By this process, the Trial Court ignored the various and sundry provisions of the Application which clearly state the rights of primary and contingent beneficiaries. Assuming that a zero does appear to the right of the name of Appellant in the Application, it does not follow that she was to be denied any benefit. To the contrary, the deceased intended to indicate that the Appellant was not to share the benefits of the policy with anyone else. The Trial Court ignored the fact that no percentage or portion of the proceeds is assigned to Aida Lopez. The deceased did not wish for anything less than the entire proceeds being delivered to his wife. Had the zero or letter 'O' not been placed in the Application, there would be no question but that the entire proceeds are the property of the Appellant."

We agree only with the last sentence in the argument. The hard and stubborn fact remains that when the deceased was faced with a question of "SHARE TO EACH BENEFICIARY" with fractions suggested, he inserted the zero in the column. We decline to ignore its presence.

The documents making up the complete contract between the parties consist of the basic policy between the Veterans Administration as the policy holder and the insurer; the certificate of insurance issued to the insured; and the deceased's application for the insurance. We have given careful consideration to all of such instruments. The parties have not pointed to any language in any instrument which would have a bearing on the question under consideration and we have not located any helpful language in our own research.

One of the leading dictionaries[3] defines the word "zero" as follows: "the numerical symbol $O$ denoting the absence of all magnitude or quantity." Another authority[4] gives as the first definition of the word: "The numerical symbol 'O'; a cypher; nought."

---

2. The form was printed and only the names, designation of relationship and the numeral "0" were in handwriting. Note the suggested use of fractions in the column designated "SHARE TO EACH BENEFICIARY" wherein the numeral "0" was placed.

3. Webster's Third New International Dictionary (B. & C. Merriam Co. 1967).

4. The American Heritage Dictionary of the English Language (1969).

Our Supreme Court in *City of Pinehurst v. Spooner Addition Water Co.*, 432 S.W.2d 515, 518 (Tex.1968), restated a rule of long standing when it used this language:

"It is elementary that if there is no ambiguity, the construction of the written instrument is a question of law for the Court. *Myers v. Gulf Coast Minerals Management Corp.*, 361 S.W.2d 193 (Tex. Sup.1962). It is the general rule of the law of contracts that where an unambiguous writing has been entered into between the parties, the Courts will give effect to the intention of the parties as expressed or as is apparent in the writing. In the usual case, the instrument alone will be deemed to express the intention of the parties for it is objective, not subjective, intent that controls."

The Supreme Court has written, on at least three occasions:

"If a written contract is so worded that it can be given a certain or definite legal meaning or interpretation, it is not ambiguous." [5]

The parties agreed that the trial court would first consider the application and the certificate to determine if there was ambiguity in the designation of the beneficiary of the policy. If the Court determined that there was no ambiguity, the Court would then make a conclusion of law as to the unambiguous meaning of the beneficiary designation. This procedure was followed, the Court determining that there was no ambiguity. The second conclusion was this:

"The unambiguous meaning of the beneficiary designation form is that the defendant, Janie B. Lopez, is to receive zero benefits and that the defendant, Aida Lopez Requena, is to receive all of the benefits of the insurance policy which is the subject of this suit."

. After careful review of the record, we approve the finding and conclusions of the trial court. *City of Pinehurst Case*, supra. Point one is overruled.

Janie's challenge to the findings and conclusions of the trial court, as contained in her second point, is found · to be without merit under our prior holdings with reference to the first point of error.

There being no error in the proceedings below, the judgment of the trial court is AFFIRMED.

CLAYTON, J., not participating.

---

**5.** *Alba Tool & Supply Co. v. Industrial Contractors*, 585 S.W.2d 662, 664 (Tex.1979), quoting from *Universal C. I. T. Credit Corp. v. Daniel*, 150 Tex. 513, 517, 243 S.W.2d 154, 157 (1951), which was, in turn, a quotation from *Lewis v. East Texas Finance Co.*, 136 Tex. 149, 154, 146 S.W.2d 977, 980 (1941).