Kenneth Gene GIBSON et al.,
Appellants,

v.

Carolyn G. BENTLEY et al., Appellees.

No. A2428.

Court of Civil Appeals of Texas,
Houston (14th Dist.).

July 30, 1980.

Rehearing Denied Sept. 10, 1980.

Paul W. Persons, Law Offices of Paul W. Persons, Houston, for appellants.

John Odam, Michael Y. Saunders, Helm, Pletcher & Hogan, Houston, for appellees.

Before BROWN, C. J., and PAUL PRESSLER and JUNELL, JJ.

JUNELL, Justice.

This appeal concerns the interpretation of a "Mary Carter" settlement agreement between the plaintiff–appellee Carolyn G. Bentley and two of the defendants below, Kenneth Gibson and his employer, Central Inspection, Inc. In that agreement Bentley, for consideration, agreed to hold the settling defendants harmless from claims for injuries received by her in an automobile–train collision while proceeding to trial and judgment against them and the other defendants, Houston Belt & Terminal Railway Company and its employee David Robinett. The trial court entered judgment on a jury verdict awarding damages and apportioning negligence between the two defendants, Gibson and Houston Belt. In interpreting the settlement agreement, the court awarded Bentley the sum representing the percentage of damages found to be attributable to the negligence of the non–settling defendant, Houston Belt, protected the settling defendants from further payment of any damages and held that the settling defendants were not entitled to any pay–back from Bentley's recovery. Gibson and Central Inspection appeal contending that the trial court incorrectly interpreted the settlement agreement. We affirm the judgment of the court below.

Plaintiff Bentley was a passenger in an automobile driven by defendant Gibson, an employee of defendant Central Inspection, Inc., and was injured when the auto collided with a train operated by defendant Robinett, an employee of defendant Houston Belt. Bentley and her attorney entered into a settlement agreement with Gibson and Central Inspection whereby their insurance carrier paid Bentley a sum of money for Bentley's promise to hold them harmless for any loss arising out of the accident. She promised to proceed to trial and judgment and to retain Gibson in the case as a defendant so that a full adjudication of liability as to all parties could be made under the comparative negligence laws of Texas. The agreement also contained the following paragraph, the interpretation of which is the subject of this lawsuit. (The "we" designates Bentley and her attorney).

(3) That (in addition to protecting and holding and saving harmless the said Kenneth Gene Gibson and Central Inspection, Inc., from loss), in the event we make a recovery in excess of any amounts for which Kenneth Gene Gibson and Central Inspection, Inc., may be adjudged liable, we shall remit for their account (a) the first FIVE THOUSAND DOLLARS ($5,000.00) of such excess recovery and (b), in addition thereto, FIFTY PER CENT (50%) of the amount by which such excess recovery exceeds TWENTY THOUSAND DOLLARS ($20,000.00), until the total amount of such remittance shall equal the total amount advanced for and in consideration of this agreement in their behalf.

The agreement was admitted into evidence at the beginning of the trial, and stipulated to be admissible for all purposes.

The jury found damages in the amount of $160,143.21 and attributed 45% of the negligence to Houston Belt & Terminal and 55% to Gibson. Gibson and Central Inspection jointly moved for judgment on the verdict and, pursuant to the agreement, that they be awarded a pay–back from Bentley's recovery against the railroad. The trial court, at a post verdict hearing, heard testimony of the intent of the parties to determine how the funds recovered should be distributed. Both parties maintained that the instrument is unambiguous, and each testified to a different interpretation of paragraph three, quoted above. Gibson's attorney testified that the parties intended that any sums recovered from the railroad were to be shared by Gibson and Bentley as recited in the agreement. Bentley's attorney testified that the parties intended that only in the event that the railroad's percentage of culpability was found to be greater than Gibson's would Gibson share in any recovery made against the railroad. Judgment was entered that Bentley recover the entire amount, $72,064.44, representing 45% of $160,143.21, with no pay–back to Gibson. Gibson and Central Inspection appeal requesting a reform of the judgment below to correctly interpret the applicable portion of the settlement agreement to allow them a pay–back from the sums recovered from Houston Belt.

■ The Texas Supreme Court case of *Universal C. I. T. Credit Corp. v. Daniel*, 150 Tex. 513, 243 S.W.2d 154 (1951), contains an extended analysis of the law regarding ambiguity in contracts. The court in that case stated that lack of clarity in language is not sufficient to render a contract ambiguous. If it is so worded that it can be given a definite and certain legal meaning it is not ambiguous. A contract is ambiguous only when the face of the instrument leaves it genuinely uncertain which of two or more meanings is the proper one; if only one reasonable meaning emerges, it is not ambiguous. *Universal, supra*. When a con-tract is susceptible to a legal meaning, as defined above, the construction of the written instrument is one of law for the court. *Myers v. Gulf Coast Minerals Management Corp.*, 361 S.W.2d 193 (Tex.1962). An unambiguous writing is presumed to contain the whole of the agreement between the parties, and contemporaneous parol evidence is not admissible to contradict or vary the terms of the written instrument. If a written contract is so worded that it can be given a definite and certain legal meaning, parol evidence is not admissible to render it ambiguous. *Lewis v. East Texas Finance Co.*, 136 Tex. 149, 146 S.W.2d 977 (1941). The intent of the parties is to be ascertained from the entire instrument, harmonizing and giving effect to all provisions of the contract so that none will be rendered meaningless. *Universal, supra*.

■ The legal issue, then, is whether this contract is ambiguous. If it is not, its interpretation is a question of law for the court unaided by extrinsic evidence. If it is ambiguous, its construction becomes a question of fact for the fact finder relying on parol evidence if necessary. Using the tests described above to determine ambiguity, we conclude that this contract is ambiguous as it is equally susceptible to two irreconcilably adverse interpretations. Paragraph three can be given either interpretation urged by the parties, but neither with the requisite certainty demanded by the authorities cited above. Thus, because it is ambiguous, parol evidence of the intent of the parties was admissible and could be considered by the trial court in interpreting the agreement.

At the hearing on the motion for judgment, the court heard testimony from both sides regarding the settlement negotiations leading up to the drafting of the settlement contract, and on the subjective intent of the parties in entering the agreement. The judgment below recites that the court concluded as a matter of fact and as a matter of law that Gibson was to receive no pay–back under the terms of the settlement agreement.

There were no findings of fact or conclusions of law requested or entered other than to those included in the judgment. The trial judge as the trier of fact may draw reasonable inferences from the evidence and, absent such findings and conclusions, his factual determinations may not be disturbed on appeal if the record contains probative evidence which reasonably supports them. The credibility of the witnesses and the weight to be given their testimony is exclusively within the province of the fact finder. *Sentry Development Corp. v. Norman*, 533 S.W.2d 664 (Tex.Civ.App.–Tyler 1977, writ ref'd n.r.e.).

Thus, because the contract is ambiguous and its interpretation a question of fact, the factual determination made by the trial judge, supported by probative evidence, cannot be disturbed absent findings and conclusions and the appropriate appellate steps.

The judgment of the trial court is affirmed.