## NUCLEAR–MEDICAL LABORATORIES, INC., Appellant,

v.

## FIRST NATIONAL BANK IN DALLAS, et al., Appellees.

### No. 20771.

Court of Appeals of Texas, Dallas.

Nov. 16, 1981.

Rehearing Denied Jan. 7, 1982.

Harold Hoffman, Gardere & Wynne, Dallas, for appellant.

John L. Estes, Locke, Purnell, Boren, Laney & Neely, Dallas, for appellees.

Before GUITTARD, C. J., and CARVER and STEPHENS, JJ.

CARVER, Justice.

Nuclear Medical Laboratories, Inc. appeals from a summary judgment holding that it failed to timely exercise its option to purchase the six acres of real property it occupied as a tenant of David Bruton, Jr. (now deceased and succeeded by his executors). We affirm.

The facts are undisputed. In May 1975, Nuclear leased six acres from Bruton by a written lease which included an option to elect to purchase the six acres, or portions thereof, with closing of the elected purchase, or purchases, at the end of the term for $2.50 per square foot. The actual exercise of the option is the center of the parties' dispute and the provision relating to the actual exercise of the option is set out in the lease as § 16.02 which provides:

> As a condition precedent to the exercise of this option, the Tenant shall give irrevocable written notice signed by the Tenant on or before eighteen (18) months before the expiration of the term of this lease, of its election to purchase the demised premises, or a portion thereof, which notice shall be personally served on Landlord, or mailed by registered or certified mail, postage prepaid, addressed to

the Landlord at the address first given above or at such other address as the Landlord may have previously designated in writing. Tenant may make more than one more election to purchase portions of the property; provided, however, that the first such election shall be for a portion of the property containing at least 3½ acres. Any and all further elections to purchase shall be of portions of the property immediately adjacent and contiguous to portions of the property which Tenant has previously elected to purchase. It is further understood and agreed that from and after that date occurring eighteen (18) months prior to the date of termination of this lease, Tenant shall have the right to elect to purchase all, but not less than all, of the property remaining subject to the terms of this lease which Tenant has not previously elected to purchase. Any such election from and after that date occurring eighteen (18) months prior to the termination of this lease must be made by notice in writing to Landlord any time prior to six (6) months prior to the termination of this lease. From and after that date occurring six (6) months prior to the termination of this lease, Tenant shall have no further right to elect to purchase any portion of the property which Tenant has not previously elected to purchase.

Nuclear gave Bruton only one notice that it elected to purchase all the property; however, this notice was given less than eighteen (18) months, but more than six (6) months, before the expiration of the term of the lease. Bruton filed suit seeking a judgment declaring that Nuclear's notice was untimely as a first notice of its election to purchase "the demised premises", or all of the property, under § 16.02. Nuclear denied that its notice was untimely and sought specific performance of its purchase option. Both parties filed motions for summary judgment and Bruton's motion was sustained.

On appeal, Nuclear urges that the summary judgment in favor of Bruton should be reversed because: (1) § 16.02 was *unambiguous* in Nuclear's favor since the third

sentence allowed Nuclear to give notice of its election when it did; or (2) § 16.02 was *ambiguous* since the first and third sentences were inconsistent as to when Nuclear could give notice of its election; or (3) § 16.02 was *ambiguous* since it was so worded that it could not be given a certain or definite legal meaning or interpretation relating to when Nuclear was bound to give notice of its election. Bruton responds that § 16.02, when read in its entirety with all of its provisions harmonized and none of its provisions treated as meaningless, unambiguously required Nuclear to give its first notice on or before eighteen (18) months prior to the expiration of the lease whether its election was for "the demised premises" or for "a portion thereof" with additional elections for additional, or all remaining, portions to follow. Since it was undisputed that Nuclear failed to give its first notice on or before this crucial date, Bruton urges that its summary judgment was proper.

An analysis of § 16.02 is compelled by the parties respective contentions and such analysis is guided by *Universal C.I.T. Credit Corp. v. Daniel,* 150 Tex. 513, 243 S.W.2d 154 (1951). *Universal* holds that, in the interpretation of a contract, the "primary concern of the courts is to ascertain and to give effect to the true intention of the parties" 243 S.W.2d at 158. *Universal* also holds that "to achieve this object the courts will examine and consider the entire writing, seeking as best they can to harmonize and give effect to all the provisions of the contract so that none will be rendered meaningless" 243 S.W.2d at 158. Since Nuclear urges under its first argument that we interpret § 16.02 by disregarding all its language save its third sentence, we reject Nuclear's first argument as contrary to the direction of *Universal.* Likewise, since Nuclear urges under its second argument that we interpret § 16.02 by disregarding all its languages save its first and third sentences, we reject Nuclear's second argument as contrary to the direction of *Universal.*

■ Nuclear's remaining argument, as well as Bruton's response, requires us to

determine whether § 16.02, considered in its entirety, permits us to ascertain the true intention of the parties as to when Nuclear's was required to give its first notice if its first made election was to purchase the full six acres. If § 16.02, considered in its entirety, cannot reasonably be given any certain or definite legal meaning or interpretation so as to fix the time for Nuclear first notice, then it is ambiguous and would not support Bruton's summary judgment. *See Lewis v. East Texas Finance Co.,* 136 Tex. 149, 146 S.W.2d 977, 980 (1941). Also if, after applying established rules of interpretation to § 16.02, it is reasonably susceptible to more than one legal meaning or interpretation as to the time fixed for Nuclear's first notice, then it is likewise ambiguous and would not support Bruton's summary judgment. *See Universal, supra,* 243 S.W.2d at 157. However, "if one reasonable meaning clearly emerges" when § 16.02 is examined in its entirety, and that one reasonable meaning required Nuclear to give its first notice on or before eighteen (18) months prior to the expiration of the lease if its first made election was for the purchase of the full six acres, then Bruton's summary judgment should be sustained. *See Universal, supra,* 243 S.W.2d at 157. If one reasonable meaning of § 16.02 clearly emerges, § 16.02 is not ambiguous. Consequently, the contract will be enforced as written and parol evidence will not be received for the purpose of creating ambiguity or to give the contract a meaning different from that which its language imports. *Lewis, supra,* 146 S.W.2d at 980; *Gibson v. Bentley,* 605 S.W.2d 337, 339 (Tex.Civ.App. —Houston [14th Dist.] 1980, writ ref'd n. r. e.).

■ Examining § 16.02 in light of the foregoing authorities, it is apparent that an orderly sequence of time for elections by Nuclear, and an orderly sequence of what may be elected by Nuclear, is found in the successive sentences of the section. First, the opening sentence of § 16.02 provides that: "As a condition precedent to the exercise of this option", Nuclear was required to give notice of its election "on or before eighteen (18) months" before the end of the lease term either "to purchase the demised premises, or a portion thereof". The one reasonable meaning clearly emerging from the first sentence of § 16.02 is that, absent this timely first notice, neither (1) the demised premises, nor (2) any portion thereof, was to be subjected to "this option" in favor of Nuclear.

Second, the remaining sentences of § 16.-02 provide, in succession, that "Tenant may make more than one election to purchase portions"; "that the first election shall be for a portion not less than three and one-half acres"; that further elected portions each should be adjacent and contiguous to the prior elected portion; that an election after the date eighteen months before the end of the lease term must include "all the property remaining and which Tenant has not previously elected to purchase"; and that no further election for any remaining portion could be made later than six months before the end of the lease term. The one reasonable meaning clearly emerging from these remaining sentences of § 16.02 is that, absent Nuclear's accomplishment of the "condition precedent" in the first sentence of § 16.02 (timely notice plus "first election" of a three and one-half acre "portion"), the parties' true intention was that these remaining sentences were to be inapplicable.

We hold that § 16.02 is not ambiguous under the test of *Universal, supra,* or the test of *Lewis, supra,* and that the failure of Nuclear to accomplish the "condition precedent" to the exercise of its option by notice of its election to purchase given "on or before eighteen months before the expiration of the term of this lease" caused the option, and all of Nuclear's several elections, to expire. Consequently, the trial court properly sustained Bruton's summary judgment.

Affirmed.

STEPHENS, Justice, dissenting.

I cannot agree with the majority that only one reasonable meaning clearly emerges from an analysis of section 16.02 of

the contract; accordingly, I respectfully dissent.

I do agree with the majority that *Universal CIT Credit Corp. v. Daniel*, 150 Tex. 513, 243 S.W.2d 154 (1951), held that the duty of the court is to ascertain and give effect to the true intention of the parties, and in doing so "the court is to examine and consider the entire writing, seeking as best they can to harmonize and to give effect to all the provisions of the contract so that none will be rendered meaningless." The very words of the court, "seeking as best they can to harmonize" in and of themselves recognize that this may not be possible in all cases.

Paragraph XVI of the contract in this case, entitled *Option to Purchase*, contains four sections. Sections 16.01, 16.03 and 16.-04 detail the terms of the option as to price, time of closing, and other matters not in dispute. Section 16.02, the disputed section, is set out in its entirety in the majority opinion and need not be restated in this dissent. I first note that section 16.02 is one continuous paragraph. The dispute arises over whether the condition precedent, as expressed in the first sentence of section 16.02, controls all elections which may be made under section 16.02, or whether it controls only the elections permitted before eighteen months from expiration of the lease. I conclude that an equally reasonable construction of section 16.02, as opposed to the construction expressed by the majority, is that the portion of section 16.02, to-wit:

> It is further understood and agreed that from and after that date occurring eighteen (18) months prior to the date of termination of this lease, Tenant shall have the right to elect to purchase all, but not less than all, of the property remaining subject to the terms of this lease which Tenant has not previously elected to purchase. Any such election from and after that date occurring eighteen (18) months prior to the termination of this lease must be made by notice in writing to Landlord any time prior to six (6) months prior to the termination of this lease;

is an independent and separate election that may be made after eighteen months and before six months from the expiration of the lease, provided the lessee desires to purchase all of the remaining property, whether it be the entire tract, or only a portion remaining from prior elections. Consequently, since I view both interpretations to be plausible, and not unreasonable, I would hold that section 16.02 is ambiguous, and thus reverse and remand to determine the true intentions of the parties.