

## COURT OF APPEALS
### SECOND DISTRICT OF TEXAS
### FORT WORTH

### NO. 02-09-00303-CV

IN THE INTEREST OF K.M.J.,
A CHILD

------------

FROM THE 89TH DISTRICT COURT OF WICHITA COUNTY

------------

## MEMORANDUM OPINION[1]

------------

### I. INTRODUCTION

Appellant Danny James appeals the trial court's judgment granting Appellee Karen Lynelle James Adair's motion to enforce an agreed order for child support. In his first three issues, including eight subissues, James argues that the trial court abused its discretion by failing to literally interpret the agreed order and by ordering repayment of expenses for an adult child that had graduated from high school. In a fourth issue, James argues that the trial court

---

[1]*See* Tex. R. App. P. 47.4.

abused its discretion by enforcing an oral promise to pay child support after a child's high school graduation. We will modify the trial court's judgment and affirm the judgment as modified.

## II. FACTUAL BACKGROUND

James and Adair signed an agreed order requiring James to pay Adair $550 per month in child support for their children, R.J. and K.J. The obligation began March 1, 2004, and continued until R.J. was eighteen years old and no longer attended high school;[2] then James was to pay Adair $440 per month until K.J. was eighteen and no longer attended high school.[3] The agreed order also required James to pay half of all medical expenses and half of all costs associated with school activities. In a motion to enforce, Adair sought confirmation of all arrearages and rendition of a money judgment. At a hearing on her motion, the trial court entered into evidence a summary of Adair's testimony, itemizing the requested expenses. At the conclusion of the hearing, the trial court took judicial notice of the agreed order and granted Adair's motion, confirming the amount that she had requested.[4] The judgment awarded Adair

---

[2]The record shows that R.J. turned eighteen on December 24, 2007, and he graduated from high school in May 2008.

[3]The record shows that K.J. turned eighteen on May 3, 2009, and graduated from high school on May 30, 2009.

[4]After selling R.J.'s $10,000 truck for $8,000, Adair modified her request, asking James to pay half of the remaining $2,000. Changing this expense, the trial court confirmed the exact amount of arrearages Adair alleged in her motion, excluding interest.

2

$15,735.76 for "school related cost arrearages" and $390.00 for "unreimbursed health care expense arrearages." This appeal followed.

### III. CONTRACT CONSTRUCTION AND AGREED ORDER

In his first three issues, James argues that the trial court abused its discretion by interpreting the agreed order to require James to pay half of all activities related to high school and college and ordering support of an adult child that had graduated from high school. James thus argues that the trial court misconstrued the agreed order and that ordering support for an adult child violates the Texas Family Code.[5]

We apply an abuse of discretion standard in reviewing a trial court's decision to grant or deny the relief requested in a motion for enforcement. *See Worford v. Stamper*, 801 S.W.2d 108, 109 (Tex. 1990). A trial court abuses its discretion by acting arbitrarily, unreasonably, or without reference to guiding principles. *Walker v. Packer*, 827 S.W.2d 833, 840 (Tex. 1992); *Att'y Gen. of Tex. v. Stevens*, 84 S.W.3d 720, 722 (Tex. App.—Houston [1st Dist.] 2002, no pet.). In rendering a final judgment for child-support arrearages, the trial court follows a two-step process. *In re C.P.*, 327 S.W.3d 296, 301 (Tex. App.—El Paso 2010, no pet.). First, the trial court, acting as a mere scrivener, mechanically tallies the arrearage amount. *Id.* Second, the trial court applies any statutory offsets, credits, or counterclaims before rendering the final

---

[5]Adair did not file a brief.

judgment. *Id.* An award of child support may be modified only by the filing of a motion in the trial court. *Id.*; *see* Tex. Fam. Code Ann. § 156.002 (West 2008). In confirming child-support arrearages, the trial court's calculations must be based on the evidence presented, not the trial court's assessment of a fair and reasonable result. *Chenault v. Banks*, 296 S.W.3d 186, 190 (Tex. App.—Houston [14th Dist.] 2009, no pet.). We will uphold the trial court's findings as long as there is some evidence of substantive and probative character that supports its decision. *See Worford*, 801 S.W.2d at 109.

When interpreting an agreed order for child support, we interpret the order as a contract between the parties and apply the general rules of contract construction. *Ex parte Jones*, 163 Tex. 513, 520, 358 S.W.2d 370, 375 (1962) ("This agreed judgment must be interpreted as if it were a contract . . . and the interpretation thereof is governed by the laws relating to contracts, rather than laws relating to judgments."). Our primary concern is ascertaining the meaning of the contract and giving effect to the true intent of the parties. *Seagull Energy E & P, Inc. v. Eland Energy, Inc.*, 207 S.W.3d 342, 345 (Tex. 2006); *Frost Nat'l Bank v. L & F Distribs., Ltd.*, 165 S.W.3d 310, 311–12 (Tex. 2005). To discern this intent, we "examine and consider the *entire writing* in an effort to harmonize and give effect to *all the provisions* of the contract so that none will be rendered meaningless." *Coker v. Coker*, 650 S.W.2d 391, 393 (Tex. 1983) (emphasis in original). No single provision taken alone will be given controlling effect; rather,

4

all of the provisions must be considered with reference to the whole instrument. *Id.*

If we can give the agreement a definite legal meaning or interpretation, it is not ambiguous, and we must construe it as written. *Universal C.I.T. Credit Corp. v. Daniel*, 150 Tex. 513, 517, 243 S.W.2d 154, 157 (1951). A contract is not ambiguous simply because the parties disagree over its meaning. *Dynegy Midstream Servs., L.P. v. Apache Corp.*, 294 S.W.3d 164, 168 (Tex. 2009).

There is no contention that the agreement is ambiguous, and we agree. We will consider the provisions' location in the agreement, the surrounding text, and the language used in construing the following provisions:

*Child Support*

IT IS ORDERED that [James] is obligated to pay and shall pay to [Adair] child support of $550.00 per month, with the first payment being due and payable on March 1st, 2004 and a like payment being due and payable on the first day of each month thereafter until the first month following the date of the earliest occurrence of one of the events specified below:

1. any child reaches the age of eighteen years, provided that the periodic child support payments shall continue to be due and paid until the end of the month in which the child graduates from high school if the child is:

a. enrolled:

1) [in a program leading toward a high school diploma];

2) [in a joint program receiving college credit and credit towards a high school diploma];

5

3)    [in a private high school leading towards a high school diploma];

. . . .

Thereafter, [James] is ORDERED to pay [Adair] child support of $440.00 per month . . . for the second child.

. . . .

**IT IS ORDERED** *that [James] is to pay [Adair] one-half of the cost associated with any and or all school activities for the children, the subject of this suit, so long as [Adair] gives to [James] 7-days notice of the amount due and for what activity.*

*Health Care*

IT IS ORDERED that medical support shall be provided for the children as follows:

1.    [James's] Responsibility – It is the intent and purpose of this order that [James] shall, at all times, provide medical support for the children as additional child support.  IT IS THEREFORE ORDERED that, *as additional child support*, [James] shall provide medical support for the parties' children, *for as long as child support is payable* under the terms of this order, as set out herein.

. . . .

[Each parent] is ORDERED to pay 50 percent of all reasonable and necessary health-care expenses not paid by insurance and incurred by or on behalf of the children . . . *for as long as child support is payable* under the terms of this order.  [Emphasis added.]

The agreement requires the payment of monthly support, support associated with school activities, and medical expenses.  The "Child Support" section includes both monthly support and support associated with school activities, and it lists the circumstances under which child support terminates.

6

The "Health Care" section requires payment of medical expenses, and the section states numerous times that it requires the payment of medical costs "as long as child support is payable." It is apparent that the parties intended that James's duty would terminate under all the provisions at the same time that his duty for monthly support terminated.

Both children turned eighteen prior to high school graduation, and the parties agreed at trial that support terminated for each child upon that child's high-school graduation. The provision providing for termination requires continued support *after* the child turns eighteen, but only if the child is working towards a high school diploma.[6] Adair contended at the hearing that she was entitled to support associated with school activities even if the child had concluded high school and, thus, was *not* working toward a high school diploma, but the rules of contract construction set out above do not permit such a construction of the agreement. The agreement does not confer a right of support associated with school activities if the child is not working toward a high school diploma. Additionally, as prerequisites for reimbursement for costs associated with school activities, we construe the agreement to require that Adair notify James of the amount of the expense and that she notify him of what school

---

[6]Because the parties specified three types of schools that would allow for continued support after eighteen, we construe this to mean that James must pay half of the children's medical expenses and half of the costs associated with their school activities, including college-related expenses, until the child is no longer attending one of the types of schools listed.

7

activity the expense is associated with. *See In re T.J.L.*, 97 S.W.3d 257, 267 (Tex. App.—Houston [14th Dist.] 2002, no pet.) (holding that trial court properly denied mother's reimbursement request because she failed to comply with the notice provision's time requirement, which was a prerequisite for obtaining reimbursement from father).

Therefore, the unambiguous terms of the agreed order entitled Adair to a judgment for the unpaid amount of medical expenses that she incurred for a child prior to that child's graduation and expenses associated with school activities if she incurred the expense before the child graduated from high school and if she provided seven days' notice to James "of the amount due and for what activity."

## A. Expenses Incurred Before Graduation and Associated with School Activities

In subissues one, four, and six of the first issue, James argues that the trial court abused its discretion by ordering him to reimburse Adair for the children's cell phones, by ordering him to reimburse Adair for R.J.'s college registration and orientation, and by interpreting "school activity" to include college. We disagree.

Adair requested reimbursement for half of the children's cell phone expenses while they attended high school. Adair testified that she provided notice to James of the amount due and for what activity, which was calling parents to pick them up from school when sick and from activities after school. James testified that he could not afford cell phones and did not agree to pay for

8

them.  But the agreement does not require James's consent; thus we overrule James's fourth subissue.

Adair also requested reimbursement for R.J.'s college registration and orientation that he attended in April 2008 before his high school graduation. Adair provided notice to James of the amount due and for what activity, which was college registration and orientation.  While these were expenses for college, they were for school activities that Adair incurred before R.J. graduated high school, and she provided notice as required by the agreement.  Therefore, the record contains evidence of a substantial and probative character supporting the trial court's judgment ordering repayment of these expenses because Adair complied with the prerequisite for obtaining reimbursement from James. Accordingly, we overrule James's first and sixth subissues of his first issue.

**B.    Other Expenses Incurred Before Graduation—Some Associated with School Activities**

In issue four and subissues three, seven, and eight of issue one, James argues that the trial court abused its discretion by ordering him to pay for costs indirectly related to school activities.  James contends that the provision requires that the expense "relate to a specific school activity and not merely relate to attending school in general."  Were we to adopt James's interpretation, we would render the clause stating "cost associated with any *and or all school activities*" meaningless.  [Emphasis added.]  Adair argued at the hearing on her motion that the provision provides for the payment of all expenses "related" to school and

9

"college-related expenses." Were we to adopt Adair's interpretation, requiring James to reimburse Adair for expenses related to school generally, we would render the notice provision meaningless because it requires "notice of the amount due and *for what activity*." [Emphasis added.] Because we presume that the parties intended every clause to have some effect and that no clause is meaningless, we reject both James's and Adair's interpretation. *See Coker*, 650 S.W.2d at 393. Therefore, as explained above, we conclude that the agreed order entitled Adair to repayment of all expenses associated with school activities that she incurred for a child prior to that child's high school graduation if she provided notice of the amount and notice of what activity.

Adair requested reimbursement for half of the cost of the children's vehicles. Adair testified that she notified James of the amount due for both vehicles and that the children use their vehicles to drive to school and to drive home after their numerous school activities. Also, Adair testified that she provided James with notice of the amount due for gas and testified that the gas was to drive to school and drive home after their school activities. Adair's notice for the children's vehicles and gas satisfied the notice requirement provided by the agreement. The evidence supports the trial court's award for these expenses.

Although Adair provided James with notice of the amount of driver's education, vehicle insurance, repairs, maintenance, and tags, the record does not contain any evidence of a substantive and probative character that she

10

provided notice of what school activity these expenses were tied to. Adair's testimony merely showed that these expenses "went along with [the] vehicle." Thus, the trial court abused its discretion by ordering James to reimburse Adair for these vehicle-related expenses totaling $3,305.47 because Adair did not comply with the prerequisite for obtaining reimbursement from James. Therefore, we overrule in part and affirm in part James's third subissue.

James argues that the trial court's judgment should not include half of the cost of school supplies and clothes. Adair's testimony explained that most children "get a few new clothes at the beginning of the school year." The record reveals that on prior occasions Adair notified James of the cost of uniforms and what activity the uniforms were associated with and notified James of the cost of a calculator and that it was for an American Mathematics Competition; James does not contest these expenses. But here, Adair merely explained that these clothes and supplies were "directly associated with their schooling," which fails to satisfy the prerequisites outlined in the agreement. Adair testified that the children's school clothes cost more as they grew older and that James's monthly support did not cover these expenses, but her testimony appears to be a plea for increased support rather than arguing that the expense was associated with a school activity. Thus, the trial court abused its discretion by awarding Adair half the cost of school clothes and supplies totaling $900 because Adair did not comply with the prerequisite for obtaining reimbursement from James by notifying him of the particular school activity the expenditures were for.

11

Therefore, we sustain James's fourth issue and subissues three, seven, and eight of his first issue.

### C.    Expenses Incurred After Graduation

In his second issue, James argues that the trial court abused its discretion by enforcing an oral agreement to support an adult child after graduation.[7]  In his third issue and second and fifth subissues of his first issue, James argues that the trial court abused its discretion by ordering him to pay for expenses that Adair incurred for R.J.'s support after graduating from high school.  The trial court's judgment awarded Adair $1,883.00 for the following expenses that she incurred after R.J.'s high school graduation:

| | | |
|---|---|---|
| Spanish trip/AFA trip | June 2008 | $775.00 |
| AFA in-processing | June 2008 | $500.00 |
| Thanksgiving travel | Nov. 2008 | $246.25 |
| Christmas travel | Dec. 2008 | $211.75 |
| Contacts | Dec. 2008 | $150.00 |

As to Adair's argument regarding James's oral promise to pay expenses that she incurred after R.J.'s graduation—the Thanksgiving and Christmas travel—the Texas Family Code prohibits court-ordered child support once a child reaches the age of majority and graduates high school.  *See* Tex. Fam. Code. Ann. § 154.001 (West 2008) (stating court may order payment of child support "until the child is 18 years of age or until graduation from high school, whichever

---

[7]While the trial judge did not address the oral agreement directly, the judgment included expenses that Adair incurred for R.J.'s support after high school graduation.

occurs later"). Parties may agree to continued support of a child over eighteen, but to seek enforcement, parties to an order must have agreed that the terms would be enforced contractually or the order must expressly incorporate a contractual agreement. *See* Tex. Fam. Code. Ann. § 154.124(c) (West 2008); *Bruni v. Bruni*, 924 S.W.2d 366, 368 (Tex. 1996) (stating that parents' agreement that one provide support for children until turning twenty-one "is enforceable as a contract only if their agreement so provides"); *Elfeldt v. Elfeldt*, 730 S.W.2d 657, 658 (Tex. 1987) (stating that terms "are not enforceable as contract terms unless the agreement so provides"); *Burtch v. Burtch*, 972 S.W.2d 882, 886 (Tex. App.—Austin 1998, no pet.) ("Absent a contractual agreement, there is no basis for a court to enforce child support for children who have graduated from high school and are over the age of eighteen.").

Because James has no statutory obligation to support an adult child after high-school graduation, the trial court could not order James to pay these expenses unless he is bound by a contract. The agreed order does not include a written agreement for extended child support that is enforceable as a contract. Accordingly, we hold that the trial court abused its discretion by ordering James to pay Adair for the Thanksgiving and Christmas travel without any contractual or statutory basis. *See* Tex. Fam. Code Ann. § 154.124(c); *Bruni*, 924 S.W.2d at 368; *Elfeldt*, 730 S.W.2d at 658.

In addition to the Thanksgiving and Christmas travel, the trial court ordered James to pay for half of the combined cost of R.J.'s high school Spanish trip and

13

trip to the AFA, AFA in-processing, and contact lenses. Regarding the Spanish and AFA trip, the Spanish trip was a high school activity, and Adair incurred the cost before R.J. had graduated. Adair testified that James had failed to pay $200 of his half of the Spanish trip's cost and that there was an additional fuel charge of $264. Adair listed $775 for the cost of the combined trips, but the remaining $311 was for the trip to the AFA, which was a college expense. The remaining expenses were for R.J.'s support after he had graduated high school, and the agreement does not require James to pay Adair for half of their cost. We hold that the trial court abused its discretion by including expenses in the judgment amount that were for R.J.'s support after he had turned eighteen and graduated high school. James is not required to pay Adair for half of the AFA trip, the AFA in-processing, the Thanksgiving and Christmas travel, or the contact lenses. Therefore, we sustain James' third issue and his second and fifth subissues.

## IV. Conclusion

We hold that the trial court abused its discretion by confirming $5,934.47 in child support arrearages. Accordingly, we modify the trial court's judgment to reflect an arrearage amount of $9,861.29 in "school related cost arrearages" and $240.00 for "unreimbursed health care expense arrearages." *See* Tex. R. App. P. 43.2(b); *In re A.R.J.,* 97 S.W.3d 833, 835 (Tex. App.—Dallas 2003, no pet.). We affirm the trial court's judgment as modified.


BILL MEIER

14

/s/ JUSTICE

PANEL:  LIVINGSTON, C.J.; DAUPHINOT and MEIER, JJ.

DELIVERED:  July 28, 2011