Mollie Lupe **LASATER** et al., Appellants,

v.

**CONVEST ENERGY CORPORATION**
et al., Appellees.

No. 5592.

Court of Civil Appeals of Texas,
Eastland.

April 30, 1981.

Rehearing Denied May 21, 1981.

Charles Florsheim, Law, Snakard, Brown & Gambill, Fort Worth, for appellants.

Dan G. Matthews, Fulbright & Jaworski, B. Rice Aston, Nelson & Harding, Houston, James F. Buchanan, Kleberg & Weil, Corpus Christi, Lawrence Mann, Mann, Cronfell, Dickinson & Saldana, Laredo, Eugene D. Stewart, Petry & Petry, Carrizo Springs, C. H. Donegan, Jr., Donegan & Ryan, Seguin, Donato D. Ramos, Person, Whitworth, Ramos, Borchers & Morales, Laredo, Kenneth Johns, Vinson & Elkins, Houston, L. H. Warburton, Jr., Perkins, Oden, Warburton, McNeill & Adami, Alice, Michael McKinney, Stubbeman, McRae, Sealy, Laughlin & Browder, Midland, and Kenneth E. Lee, San Antonio, for appellees.

RALEIGH BROWN, Justice.

This is a directed verdict case. Mollie Lupe Lasater, individually, John B. Lupe, individually and John B. Lupe and Priscilla B. Lupe, Trustees, sought a judicial determination that a portion of an oil and gas lease executed by them and partially assigned to ConVest Energy Corporation had terminated for failure to pay delay rentals in compliance with the terms of the lease.[1] The trial court granted a directed verdict

---

1. ConVest Energy 1976 Oil and Gas Program, Yarborough 1967 Trust, Metco Oil Corporation, Stanley L. Perkins, A. Pauline Sims Perkins, Ray J. Lozano, Frederick A. Overly, H. V. Risien, Kenneth E. Lee, Glennwood Warncke, Howard Jordan, First National Bank of Seguin, First City National Bank of Houston, and The Permian Corporation were also named defendants as claiming an interest in the lease.

for all defendants. Mollie Lasater, John Lupe, each individually and John Lupe and Priscilla Lupe, Trustees, appeal. We affirm.

Appellants are the owners of 2,937 acres of land and the minerals thereunder situated in Zavala and Dimmit Counties. An 80 acre parcel thereof was subject to an adverse claim by C. C. Winn. On January 16, 1976, appellants as lessors entered into an oil and gas lease with Arrow Petroleum Co. as lessee. By partial agreement, Arrow assigned to ConVest Energy Corporation such lease insofar as it covered 1,468.5 acres. The partial assignment covered alternate checkerboard tracts of basically quarter sections. It is undisputed that delay rentals in some amount were due on January 16, 1978, and that on such date ConVest tendered an amount for payment of delay rentals. The controversy concerns whether ConVest's tender was sufficient in amount.

The lease provided that it "hereby leases and lets exclusively into the said lessee . . . the land in Zavala and Dimmit Counties, Texas, as described in Exhibit "A" attached hereto and made a part hereof for all purposes." Exhibit "A" set forth the specific descriptions of the land and stated, "The entire tract contains 2,937 acres, more or less." The lease further provided "that if lessors own an interest in said lands less than the entire fee simple estate, then the royalties, rentals and other payments to be paid Lessors shall be reduced proportionately."

The lease contained a typical "unless" clause: "4. This lease shall terminate one-year from the date hereof unless on or before said anniversary date and annually thereafter . . . Lessee shall pay or tender to John B. Lupe . . . Two Thousand Eight Hundred Fifty-Seven and 00/100 (2857.00) Dollars, and to Mollie Lupe Lasater . . . Two Thousand Eight Hundred Fifty-Seven and 00/100 (2857.00) Dollars . . ."

That paragraph further provided that from the stipulated sum of $2,857 for each lessor may be subtracted $1.00 per acre per half-section for each half-section on which a well was being drilled or had been drilled during the preceding lease year, and $2.00 per acre for each half-section, production from which had paid the lessors royalty equal to $2.00 per acre.

Paragraph 18 of the lease made it subject to a Lease Purchase agreement which was executed contemporaneously with the oil and gas lease. The lease purchase agreement dealt with the bonus paid and to be paid lessors. It provided that the sum of $118,736.92 was based on the bonus purchase price of $41.56 per acre calculated on the basis of 2857 acres. It further provided:

Each of the parties recognize that 80 acres, being the West 1/2 of the Southwest 1/2 of Survey 57, Abstract 366, Certificate 2647, Zavala County, Texas, may have an Oil and Gas Lease claimed by C. C. Winn. The Lessors do not acknowledge the validity of such Lease of C. C. Winn and have agreed to include the acreage in the attached lease without the requirements of the bonus price being paid at this time.

\* \* \* \* \* \*

2. Each of the parties recognize that the lease is for 2,937.00 acres and the purchase price is now based on $41.56 per acre and to 2,857.00 acres. The Lease covers 80 acres being the West ½ of the Southwest ½ of Survey 57 Abstract 366, Certificate 2647, Zavala County, Texas. Each of the parties recognize that C. C. Winn may claim that there is an outstanding Oil and Gas Lease in his favor, or to his assigns. This in no way is to reflect that the Lessors acknowledge the validity of the Lease. It is agreed between the parties that at such time as a Release of such Lease is obtained or proof of the termination of the lease has been delivered to Lessee, Lessee agrees to immediately pay an additional $3,324.80 as bonus for this acreage.

■ The basic contention of appellants in the trial court was that ConVest failed to tender on or before January 16, 1978, as required by the lease, a sum equal to $2.00

per acre, less authorized credits, on its portion of the 2857 acres, being 1468.5 acres. Since the trial court instructed a verdict against appellants, we apply the rule as stated in *Henderson v. Travelers Insurance Company*, 544 S.W.2d 649 (Tex.1976):

> In an instructed verdict case, our task is to determine whether there is any evidence of probative force to raise fact issues on the material questions presented. Upon review, we must consider all of the evidence in its most favorable light in support of the plaintiff's position and discard all contrary evidence and inferences. *Anderson v. Moore*, 448 S.W.2d 105 (Tex. 1969); *Triangle Motors of Dallas v. Richmond*, 152 Tex. 354, 258 S.W.2d 60 (1953). . . .

Appellants urge that the trial court erred in directing a verdict because there was evidence to support their contention that the lease required payment of delay rentals of $2.00 per acre and defendants failed to make or tender such a payment. We disagree.

■ The delay rental clause of the oil and gas lease provides for a stipulated sum of $2857 to each lessor less credits allowed for drilling and production. It does not provide for delay rentals of $2.00 per acre. The lease, as it provides for delay rentals, is so worded that it can be given a certain or definite legal meaning or interpretation and is, therefore, not ambiguous. *Lewis v. East Texas Finance Co.*, 136 Tex. 149, 146 S.W.2d 977 (1941). Being unambiguous, the meaning and effect of the delay rental clause is, therefore, determined as a matter of law. *Tower Contracting Company v. Flores*, 157 Tex. 297, 302 S.W.2d 396 (1957). As stated by the court in *Wooten Properties, Inc. v. Smith*, 368 S.W.2d 707 (Tex.Civ.App.—El Paso 1963, writ ref'd):

> Where the wording of a contract is unambiguous, we do not have to deal with or concern ourselves with what intention existed in the minds of the parties, but must interpret such contract with respect to its intention and effect solely from the language used. . . .

*Universal C. I. T. Credit Corp. v. Daniel*, 150 Tex. 513, 243 S.W.2d 154 (1951).

We overrule appellants' contention that the delay rentals were to be calculated on the basis of $2.00 per acre.

Next, appellants argue that the trial court erred in holding, by implication, that the 80 acres which were subject to an adverse claim were nevertheless effective under the lease.

As set forth herein, the lease in concise and unambiguous wording covered 2937 acres not 2857 acres as urged by appellants. Additionally, the lease purchase agreement executed contemporaneously with the oil and gas lease recognizes that the lease covered 2937 acres.

■ As the court said in *Davis v. Andrews*, 361 S.W.2d 419 (Tex.Civ.App.—Dallas 1962, writ ref'd n. r. e.):

> Whether an instrument is ambiguous is a question of law. The construction to be given an unambiguous instrument is a question of law and not one of fact. These elementary rules are so well established as not to require the citation of authorities.

The court also said:

> If there is no ambiguity in a deed, the instrument will be enforced as written, even though it does not express the original intention of the parties.

> \* \* \* \* \* \*

> Another and equally important rule of construction, sometimes called "four corners rule" is that the intention of the parties, and especially that of the grantor, is to be gathered from the instrument as a whole and not from isolated parts thereof. . . .

■ We hold that the trial court correctly held that as a matter of law the oil and gas lease covered 2937 acres, which included the 80 acres subject to an adverse claim, rather than 2857 acres as asserted by appellants.

Appellants contend that the trial court erred in holding that, as a matter of law, defendants were entitled to "pair" a quarter section on which there was no produc-

tion with a noncontiguous quarter section on which there was production, in order to defeat payment of delay rentals otherwise payable on the nonproducing quarter section.

Paragraph four of the oil and gas lease provides in part:

The payment of rentals for the continuation of this lease during its primary term is a requirement regardless of drilling activity or other provisions of this lease, except that for each half section of land on which a well has been drilled during the year immediately preceding the anniversary date or is being drilled on the anniversary date hereof, the rental payment may be reduced by One and 00/100 ($1.00) Dollar per acre. Further, a rental will not be required for each half section on which a producing well has been obtained if the royalty produced from the half section during that period equals Two and 00/100 ($2.00) Dollars per acre for each year....

The original lease covered sections 57, 58 and 22 consisting of 640 acres each located in Zavala County. Further, the lease covered section 23 which consisted of 236 acres located in Zavala County and 404 acres located in Dimmit County. The lease also covered the North ½ of section 26 consisting of 320 acres located in Dimmit County and also a strip of equal and uniform width off the north side of the south ½ of section 26 containing 57 acres in Dimmit County. By its assignment Arrow assigned to ConVest the northwest quarter and the southeast quarter of each of the sections covered by the lease, plus the west half of section 26.

ConVest drilled wells and established production on the southeast quarter of section 58 which paid royalties to appellants during the year immediately preceding January 16, 1978, of more than $2.00 per acre for the half-section composed of the southeast and northwest quarter of section 58. Producing wells in the northwest quarter of section 22 produced royalties for appellants of more than $2.00 per acre for the 320 acres composed of the northwest quarter and the

southeast quarter of section 22. A well was drilled in section 26 during the year immediately preceding the anniversary date of the lease.

Appellants urge that only contiguous east/west or north/south quarter sections are "half-sections" within the meaning of the lease and that because the half-sections of land owned by ConVest consisted of checkerboard quarter sections, it could only take credits of delay rentals calculated in quarter sections. We disagree.

█ The lease is clear and unambiguous as to the granting of credits of delay rental payments due for drilling and production on half-sections. There is no provision in the lease which restricts such credits solely to contiguous quarter sections.

The lease contained a partial assignment clause which permitted the assignee to calculate delay rentals and credits on his segregated acreage. It also contained a provision for calculation of credits off delay rentals at $1.00 or $2.00 per acre per half-section. If credits for delay rentals were not permitted as to half-sections consisting of two checkerboard quarter sections, these provisions could not be given full effect.

The court in *Citizens Nat. Bank in Abilene v. Texas & P. Ry. Co.*, 136 Tex. 333, 150 S.W.2d 1003 (1941) said:

It is the duty of the court, in determining the meaning and intent of a contract, to look to the entire instrument; that is, the contract must be examined from its four corners. Stated in another way, the contract must be considered and construed as an entire instrument, and all of its provisions must be considered and construed together. It is not usually proper to consider a single paragraph, clause, or provision by itself, to ascertain its meaning. To the contrary, each and every part of the contract must be construed and considered with every other part, so that the effect or meaning of one part on any other part may be determined.

We hold that the trial court correctly construed the contract to permit credits of delay rentals per acre per half-section con-

sisting of two checkerboard quarter sections.

 Finally, appellants urge that the trial court erred in failing to allow the recovery of interest from The Permian Corporation on funds held in suspense by The Permian Corporation.

After Permian was notified of the filing of the instant suit, it suspended payment of the proceeds of production to the owners of the working interest, royalty interest and overriding royalty interest from the leases in issue from and after February 1978. Appellants refused tendered royalty payments and returned to Permian the payments made to them for royalties on the production for the month of January 1978 because they claimed all of the proceeds of production from the leases after January 16, 1978.

Appellants had executed a division order which provided in part:

FIFTH: Abstracts and other evidence of title satisfactory to you (The Permian Corporation) will be furnished to you at any time on demand. In the event of the failure to so furnish such evidence or title, or in the event of any dispute or question at any time concerning title to the above land, or the oil produced therefrom, you (Permian) may hold the proceeds of all oil received and run, without interest, until indemnity satisfactory to you (Permian) has been furnished or until such dispute or question of title is corrected or removed to your satisfaction.

Therefore, appellant contractually agreed that in the event of a dispute as to the oil produced, Permian could hold the proceeds of all oil received and run, without interest, until indemnity had been furnished to Permian or until the dispute was resolved. Appellants never offered indemnity.

Upon entry of judgment, Permian paid into the registry of the court the sum representing the portion of the proceeds attributable to the respective parties set out in the final judgment for oil produced from the leases.

Under similar facts, the court in *Gulf Pipe Line Co. v. Nearen*, 135 Tex. 50, 138 S.W.2d 1065 (1940, opinion adopted), said:

It seems to us that the purchase price of the royalty oil under the division order is not due and payable until the disputes as to ownership have been settled or a bond is furnished. Concededly no bonds were furnished. The purchase price of the oil under the facts of this case not being due and payable until the adverse claim was extinguished forces the conclusion that the defendants in error are not entitled to collect interest until the trial court's judgment was entered in this case which settled and extinguished the dispute as to the adverse claims made by the interveners herein.

The trial court correctly denied appellants' pre-judgment interest.

We have considered and overrule all points of error.

The judgment is affirmed.