ESTATE OF GLEN CLIMER, DECEASED, JEWEL CLIMER, ADMINISTRATRIX, Petitioner v. COMMISSIONER OF INTERNAL REVENUE, Respondent
Climer v. Commissioner
Docket No. 21678-91
United States Tax Court
T.C. Memo 1994-29; 1994 Tax Ct. Memo LEXIS 24; 67 T.C.M. (CCH) 2017; January 24, 1994, Filed *24 Decision will be entered under Rule 155. For petitioner: Darin N. Digby, Stanley Schoenbaum, and Banks M. Smith. For respondent: Gerald L. Brantley. SWIFT
SWIFT
MEMORANDUM FINDINGS OF FACT AND OPINION SWIFT, Judge: Respondent determined a deficiency of $ 172,563 in the Federal estate tax of the Estate of Glen Climer (decedent) and additions to tax under section 6651(a)(1) in the amount of $ 37,175. Unless otherwise indicated, all section references are to the Internal Revenue Code as of May 16, 1984, the date of decedent's death, and all Rule references are to the Tax Court Rules of Practice and Procedure. After settlement, the primary issue is the nature and extent of decedent's interest in certain real property and whether such interest is includable in decedent's gross estate. FINDINGS OF FACT Some of the facts have been stipulated and are so found. On May 16, 1984, decedent died intestate while residing in Poteet, Texas. On August 6, 1984, the County Court of Atascosa County, Texas, authorized Jewel Climer (petitioner) to be appointed administratrix of decedent's estate. On December 28, 1936, decedent married Esther Ruth Gates (Ruth Climer). Three children were born *25 of the marriage between decedent and Ruth Climer -- namely, Autry Climer, Sharon Selby, and Yondle Davis (the children). During their 18-year marriage, decedent and Ruth Climer accumulated as community assets various parcels of real property, including a residence located on 30 acres of land (the residence) and approximately 508 acres of pasture and farmland (the farmland). In 1954, decedent and Ruth Climer separated, and decedent received custody of the children. On October 7, 1954, in the District Court of Atascosa County, Texas, decedent filed a petition for divorce against Ruth Climer. On October 9, 1954, decedent and Ruth Climer executed a contract incident to their divorce (the contract) for the purpose of partitioning the community property. Under the terms of the contract, Ruth Climer promised to transfer her one-half of the community property to decedent as his separate property, and decedent promised to assume the community debts, to pay to the children one-half of the proceeds from any subsequent sale of the prior community property if such sale occurred during his lifetime, and to assume full responsibility for supporting the children. The transfer of Ruth Climer's *26 one-half of the community property to decedent and decedent's promises made in connection therewith are described in the contract as follows: NOW, THEREFORE, in consideration of the premises and for the purpose of partitioning their community estate, it is agreed that the said Glen David Climer shall have as his separate property and estate all of the community property accruing as a result of this marriage, both real and personal, and the said Esther Ruth Climer agrees, upon demand, to execute any deeds of conveyance which may be deemed necessary to effect this purpose. The said Glen David Climer will assume and agree to pay all of the community indebtedness existing against this property which amounts at this time to approximately $ 40,000.00, and to hold the said Esther Ruth Climer free and harmless from any claims arising out of said community indebtedness; and the said Glen David Climer does further by these presents agree that should he at any time during his lifetime convey any of the real estate which now belongs to the community estate, that he will pay over one-half (1/2) the proceeds thereof to the three children resulting from this marriage, share and share alike *27 * * * It is further expressly agreed and so understood that Glen David Climer does have and will have the care, custody and control of their minor children and will assume the entire amount due for their care, maintenance and education, and agrees to hold the said Esther Ruth Climer free and clear of any such financial obligation or otherwise.
On November 9, 1954, the contract under which the community property was partitioned was filed with the district court of Atascosa County, Texas, and on the same day, the district court entered a Decree of Divorce. Consistent with the contract, on November 9, 1954, Ruth Climer executed as grantor a deed (1954 deed) transferring her undivided one-half interest in all of the community property to decedent. Under the terms of the deed, Ruth Climer purported to transfer to decedent fee simple title in her one-half of the community property in exchange for decedent's promise to pay to the children one-half of the proceeds of any sale of the community property that occurred during his lifetime and decedent's promise to be solely responsible for supporting the children. The 1954 deed describes the transfer of Ruth Climer's one-half of the community *28 property to decedent, as follows: That, I, Esther Ruth Climer, a feme sole, of the County of Atascosa, and State of Texas, for and in consideration of, and pursuant to, that certain property settlement agreement, made and entered into between myself and my former husband, Glen David Climer, on October 9, A.D., 1954, which was prior to the date of our divorce; have Granted, Sold and Conveyed, and by these presents do Grant, Sell and Convey unto the said Glen David Climer of the County of Atascosa and State of Texas, all of my undivided right, title and interest in and to those certain tracts or parcels of land, lying and being situated in Atascosa County, Texas. * * * * * * It is my intention by this instrument, and I do hereby Grant, Sell, Assign, Convey and Deliver unto the said Glen David Climer all of my undivided right, title, and interest in and to all of the real and personal property which I may own belonging to the community estate of myself and my former husband, Glen David Climer, whether the same be hereinabove specifically described or not. TO HAVE AND TO HOLD THE above described property and premises, together with all and singular the rights, and appurtenances *29 thereto in anywise belonging unto the said Glen David Climer, his heirs and assigns forever; and I do hereby bind myself, my heirs, executors and administrators, to WARRANT AND FOREVER DEFEND all and singular the said premises unto the said Glen David Climer, his heirs and assigns, against every person whomsoever lawfully claiming, or to claim the same, or any part thereof. It is further expressly agreed and so understood by and between the Grantor and Grantee herein that should the said Grantee convey out of any of the above described real estate during his lifetime, that he will pay over to my beloved children, Autry Preston Climer, Sharon LaRue Climer, and Yondle Bernadette Climer, share and share alike, or to the issue of their body per capita one-half (1/2) of the net proceeds of such sale remaining, after all indebtedness against said property has been paid * * * It is further expressly agreed and so understood, that this Deed is given with the further understanding that the said Glen David Climer is assuming the full and complete responsibility for the care, support and education of my above-named children until they become of legal age.
Further, with regard to the nature *30 of the property interest transferred to decedent, the 1954 deed provides as follows: PROVIDED, HOWEVER: That nothing contained in the foregoing two paragraphs shall in anywise limit the full fee simple title in Glen David Climer to the above described and conveyed property, and no lien, express or implied is hereby created; but, however, my said children or their issue, shall be entitled to look to their Father, the said Glen David Climer and demand of him their support until they become of legal age and a one-half (1/2) of the net proceeds of any sale of real estate, after the indebtedness is paid, and their sole cause of action shall be against him and not against any of the Purchasers of any of said property, nor against the land itself.
On June 4, 1955, decedent married Jewel Climer. No children were born or adopted of this marriage. During the next 29 years, between November 9, 1954, and April 25, 1983, decedent individually sold several parcels of the real property described in the 1954 deed. The children apparently received one-half of the proceeds from these sales. Ruth Climer never received any of the proceeds from the sales nor did she ever claim an interest *31 therein. Decedent did not make gifts of any of the property described in the 1954 deed nor did he mortgage any of the property. On April 28, 1955, decedent sold a parcel of the real property that was described in the 1954 deed, and decedent executed a warranty deed with respect to this parcel in which he retained a vendor's lien as "Glen Climer, Trustee". On July 5, 1957, decedent as "Glen D. Climer, Trustee" executed a release of the vendor's lien. This was the only parcel of real property with respect to which decedent was referred to as a trustee. By the time of decedent's death, only two parcels of the real property described in the 1954 deed had not been sold by decedent -- the residence and the farmland. From November of 1954 until his death in May of 1984, decedent paid all local and ad valorem taxes due on all of the real property described in the 1954 deed, and decedent did not receive any contribution or reimbursement from the children for any portion of such taxes. Decedent also managed and operated the real property, and decedent retained all rental and other income accruing from the use of the real property. The children did not benefit from any of the rental *32 or other income realized from the property except to the extent that decedent used the income to support the children. Decedent and Jewel Climer lived in the residence from June 4, 1955, the date of their marriage, until decedent's death in 1984. Ruth Climer never filed a Federal gift tax return on which was reported a gift to the children of any portion of the real property described in the 1954 deed. From November 9, 1954, until his death on May 16, 1984, decedent did not file fiduciary Federal income tax returns as trustee for any trust in which the children were beneficiaries. Under Texas law of intestate succession, Jewel Climer, decedent's widow, apparently disclaimed any interest she had in the residence or in the farmland, and the children received from decedent's estate decedent's entire interest in the residence and in the farmland. On November 25, 1988, after decedent's death, the children executed partition and quitclaim deeds dividing the residence and the farmland among themselves. On September 16, 1988, decedent's Federal estate tax return was filed. On Schedule A of decedent's Federal estate tax return, petitioner reflected the full fair market value of the residence *33 as $ 78,940, but petitioner included in decedent's gross estate only $ 39,470 which represented an undivided one-half interest in the residence. Also on Schedule A, petitioner reflected the full fair market value of the farmland as $ 395,214, but petitioner included in decedent's gross estate only $ 60,413, which represented, after the section 2032A valuation reduction, an undivided one-half interest in the farmland. The total values that petitioner reflected on Schedule A for the residence and for the farmland were based on an appraisal report prepared at petitioner's request by Jess Mills, Jr. of Mills Real Estate. On audit, respondent determined that the full fair market value of the residence and of the farmland, as such values were reflected on Schedule A of decedent's estate tax return (namely, $ 78,940 and $ 395,214, respectively) should be included in decedent's gross estate. Respondent also disallowed the section 2032A valuation reduction made to the farmland. [1]
*34 OPINION Evidentiary Matters
Before addressing the nature and extent of decedent's property interest in the residence and in the farmland, we address the admissibility of certain evidence. Respondent objects on hearsay grounds to the admission into evidence of a letter written on August 23, 1989, by Ruth Climer to Jewel Climer. Respondent asserts that the letter is hearsay and that there is no applicable exception to the hearsay rule. Petitioner argues that the letter is not hearsay and that the letter is circumstantial evidence of Ruth Climer's intent in executing the 1954 deed. Petitioner argues, alternatively, that if the letter is hearsay, it is admissible under Federal Rule of Evidence 803(24), the residual hearsay rule. The letter written by Ruth Climer to Jewel Climer contained the following statement: Jewel as you know I left my half of all the property we owned to the three kids. And since there has been such a mess of the estate since Glen's death, I have told all three kids I didn't understand why they should be taxed for what I had left for them. Told all three to check with their lawyer. Jewel, it was specified in the divorce papers that my half went *35 to them.
The letter is hearsay since it is offered to prove the truth of the matter asserted, namely, that Ruth Climer's intent was to leave her one-half of the community property to the children. The letter is not admissible under the residual hearsay rule because it lacks "circumstantial guarantees of trustworthiness". Fed. R. Evid. 803(24); see also Goldsmith v. Commissioner, 86 T.C. 1134, 1139-1144 (1986). The letter from Ruth Climer to Jewel Climer was written nearly 35 years after the 1954 deed was executed, over 5 years after decedent's death, and nearly 1 year after decedent's estate tax return was filed. Ruth Climer was obviously aware at the time she wrote the letter that decedent's estate tax return was under audit. Thus, even if the letter were admitted, the letter is self-serving and is entitled to little or no weight, and admission of the letter would not change the result herein. The letter is not admitted. Respondent objects to the admission of the testimony and expert witness reports of Michael S. Karger and Sara E. Dysart on the grounds that their testimony and reports improperly express opinions of law. The reports and *36 testimony do not attempt to determine a point of law (namely, whether the 1954 deed is ambiguous) but merely address the proper valuation of the disputed property. See Estate of Lennon v. Commissioner, T.C. Memo. 1991-360. These expert witness reports and testimony are admitted to assist the Court in valuing the residence and the farmland. Nature and Extent of Decedent's Property Interest
Where Federal estate tax liability turns on the nature of a property interest held by a decedent, State law is used to establish the nature and extent of the property interest. Commissioner v. Estate of Bosch, 387 U.S. 456 (1967); Morgan v. Commissioner, 309 U.S. 78 (1940). In this case, Texas law applies to establish the nature and extent of decedent's property interest in the real property governed by the 1954 deed. Under Texas Prop. Code Ann. sec. 5.001(a) (West 1984), an instrument is presumed to transfer fee simple title as follows: An estate in land that is conveyed or devised is a fee simple unless the estate is limited by express words or unless a lesser estate is conveyed or devised *37 by construction or operation of law. * * *
Thus, under Texas law, a deed will be construed to confer upon the grantee the greatest estate that the terms of the deed will permit. Ladd v. Du Bose, 344 S.W.2d 476, 480 (Tex. Civ. App. 1961). In Texas, whether a deed is ambiguous and the construction to be given an unambiguous deed are questions of law for the Court to decide. See Luckel v. White, 819 S.W.2d 459, 461 (Tex. 1991); Lasater v. Convest Energy Corp., 615 S.W.2d 340, 343 (Tex. Civ. App. 1981). The primary duty of a court when construing an unambiguous deed is to ascertain the intent of the parties from the "four corners" of the deed. Luckel v. White, supra at 461-462 (quoting Garrett v. Dils Co., 299 S.W.2d 904, 906 (Tex. 1957)). A deed is ambiguous only if, after the application of pertinent rules of interpretation to the plain language of the deed, it is uncertain which of two or more meanings is the proper meaning. See Universal C.I.T. Credit Corp. v. Daniel, 243 S.W.2d 154, 157 (Tex. 1951). *38 If only one reasonable meaning is possible, then a deed is not ambiguous. Id. An estate granted by the plain and unequivocal language of one clause cannot be diminished by a subsequent clause unless language of the subsequent clause is as clear, plain, and unequivocal as the language of the initial clause. See Bullington v. Estate of Belcher, 665 S.W.2d 517, 518 (Tex. Ct. App. 1983). Where all of a grantor's interest has passed by an unambiguous deed, the later acts of the grantee tending to prove a construction of the deed against his interest or in recognition of rights in others will not impair the title vested in the grantee. Black v. Shell Oil Co., 397 S.W.2d 877, 888 (Tex. Civ. App. 1965). In deciding whether or not to exclude extrinsic evidence that bears upon disputed property rights and interests under a deed, we must look to the governing State's parol evidence rule. Estate of Craft v. Commissioner, 68 T.C. 249, 263 (1977). In Texas, even if a deed is unambiguous, the Court may admit evidence of the facts and circumstances as they existed at the time the deed was executed, *39 not to add to or vary the terms of the deed, but for the purpose of ascertaining the real intent of the parties. Murphy v. Dilworth, 151 S.W.2d 1004 (Tex. 1941); Benson v. Jones, 578 S.W.2d 480, 484 (Tex. Civ. App. 1979); Coffee v. William Marsh Rice University, 408 S.W.2d 269, 283-284 (Tex. Civ. App. 1966). Generally, a grantee's mere promise as specified in a deed will not limit a fee simple grant. Hearne v. Bradshaw, 312 S.W.2d 948, 951 (Tex. 1958). A grantee's promise or obligation contained in a deed will be construed as a mere promise or covenant unless an intent to create a conditional estate is clearly and unequivocally revealed by the language of the deed. Hearne v. Bradshaw, supra at 951 (holding that a provision in a deed obligating the grantees to furnish food and clothing to the grantor was a covenant and not a condition); West v. Thomas, 441 S.W.2d 209, 211 (Tex. Civ. App. 1969). A covenant is a promise or obligation expressed in a deed where the promise or obligation is the *40 consideration for execution of the deed. West v. Thomas, supra at 211. The only remedy for the breach of a covenant is an action for damages. Hearne v. Bradshaw, supra at 951; Zapata v. Torres, 464 S.W.2d 926, 929 (Tex. Civ. App. 1971). A grantee's promise or covenant given in consideration for the transfer does not in itself indicate an intent to transfer a conditional estate. Zapata v. Torres, supra at 929. There must be additional language that clearly indicates the grantor's intent to transfer something less than the full fee simple estate. Id.
For purposes of Federal estate taxes, the value of a gross estate is determined by including the value, as of the date of death, of a decedent's interest in all property. Secs. 2031(a), 2033. The value of property included in the gross estate is the fair market value of the property on the date of death, defined as "the price at which the property would change hands between a willing buyer and a willing seller, neither being under any compulsion to buy or to sell and both having reasonable *41 knowledge of relevant facts." United States v. Cartwright, 411 U.S. 546, 551 (1973); Estate of Watts v. Commissioner, 823 F.2d 483, 485 (11th Cir. 1987), affg. T.C. Memo. 1985-595; sec. 20.2031-1(b), Estate Tax Regs. The willing buyer and willing seller who are considered in the determination of fair market value are hypothetical, objective participants in a hypothetical sale of the property. Estate of Watts v. Commissioner, supra at 486. Valuation is to be based on facts reasonably known at the date of valuation. Subsequent events are not considered in fixing fair market value except to the extent that they were reasonably foreseeable on the date of valuation. Estate of Gilford v. Commissioner, 88 T.C. 38, 52 (1987). The fair market value of property is a question of fact. Morris v. Commissioner, 761 F.2d 1195, 1200 (6th Cir. 1985), affg. T.C. Memo. 1982-508. Expert reports and testimony admitted to assist in the valuation of property are not binding upon the courts *42 when such evidence is contrary to the courts' own judgment. Helvering v. National Grocery Co., 304 U.S. 282, 295 (1938); Estate of Hall v. Commissioner, 92 T.C. 312, 338 (1989). We may reach a decision on value based on our analysis of all the evidence in the record, and we may reject the opinion of an expert witness in its entirety. Palmer v. Commissioner, 523 F.2d 1308, 1310 (8th Cir. 1975), affg. 62 T.C. 684 (1974). A discount in the value of property to reflect the decreased marketability of fractional interests in property is often appropriate. Estate of Clapp v. Commissioner, T.C. Memo. 1983-721. Values for property as reflected on Federal estate tax returns are treated as admissions and lower values generally should not be substituted without cogent proof by the estate's representative that the values reflected on the returns were erroneous. Estate of Pillsbury v. Commissioner, T.C. Memo. 1992-425; Estate of McGill v. Commissioner, T.C. Memo. 1984-292; see also *43 Estate of Hall v. Commissioner, supra.
Petitioner argues that the language in the 1954 deed referring, among other things, to decedent's obligation to share one-half of the proceeds of a sale of the property created a trust in favor of the children with respect to Ruth Climer's one-half interest in the community property, and therefore that one-half of the value of the residence and of the farmland is not includable in decedent's gross estate. Respondent asserts that the 1954 deed is unambiguous, that the 1954 deed did not create a trust in favor of the children, that decedent received a fee simple interest and title to the property, and therefore that the full fair market value of the disputed real property should be included in decedent's gross estate under section 2033. We agree with respondent. The clear language used by Ruth Climer and by decedent in the 1954 deed establishes that the intent of Ruth Climer and decedent was to transfer to decedent fee simple title to the residence and the farmland. There are four specific references contained in the 1954 deed that indicate Ruth Climer's intent to transfer fee simple title to decedent as *44 follows: (1) In the granting clause the language reads that Ruth Climer did "Grant, Sell and Convey unto the said Glen David Climer * * * all of [her] undivided right, title and interest"; (2) in the body of the deed the language reads: "It is my [Ruth Climer's] intention by this instrument, and I do hereby Grant, Sell, Assign, Convey and Deliver unto the said Glen David Climer all of my undivided right, title and interest"; (3) in the habendum clause the language reads: "TO HAVE AND TO HOLD THE above described property * * * unto the said Glen David Climer, his heirs and assigns forever"; and (4) in the final paragraph of the deed, the language reads: "PROVIDED, HOWEVER: That nothing contained in the foregoing two paragraphs shall in anywise limit the full fee simple title in Glen David Climer". The contract that was executed on October 9, 1954, indicates that the intent of Ruth Climer and decedent was to transfer to decedent a fee simple title. Under the contract, Ruth Climer agreed to transfer her full interest in all of the community property to decedent in exchange for three promises by decedent -- namely, decedent's promise to pay all of the community obligations then existing, *45 decedent's promise to pay to the children one-half of the proceeds of any sale of the community property made during his lifetime, and decedent's promise to assume full responsibility for the care, maintenance, and education of the children. Decedent's promise to pay to the children one-half of the proceeds of any sale of the real property made during his lifetime and decedent's promise to care for and support the children were repeated in the 1954 deed. These promises were merely covenants made by decedent that in no way limited Ruth Climer's transfer to decedent of a full fee simple title in the property. If decedent had breached his promise to pay one-half of any sales proceeds during his lifetime to the children, or if decedent had breached his promise to support the children, the children could only have brought an action in damages. See Hearne v. Bradshaw, 312 S.W.2d 948, 951 (Tex. 1958); Zapata v. Torres, 464 S.W.2d 926, 929 (Tex. Civ. App. 1971). These promises made by decedent did not create a trust in favor of the children, and they did not limit Ruth Climer's fee simple transfer to decedent. Additional *46 facts support our conclusion herein. Ruth Climer did not file a Federal gift tax return reporting as a gift to the children any portion of the real property described in the 1954 deed. From November 9, 1954, until his death on May 16, 1984, decedent did not file fiduciary Federal income tax returns as trustee with respect to the property. Decedent paid all taxes and managed, operated, and received all income from the real property described in the 1954 deed. With respect to the residence and to the farmland, the children did not contribute to the labor or expenses of management, nor did they receive any income from operations. Decedent merely paid the children one-half of the proceeds of the sales that he made during his lifetime as he promised to do under the terms of the 1954 deed. Further, use by decedent of the word "trustee" in a sale of one of the parcels of the real property described in the 1954 deed is not particularly significant because reference was made to decedent as trustee with respect to the proceeds of the sale, not with respect to the real property itself. Because decedent owned full fee simple title in the residence and the farmland, we conclude that the *47 full fair market value of the residence and the farmland is includable in decedent's gross estate. We now address the valuation of the real property. At the trial of this case, petitioner called three expert witnesses to testify. Petitioner's first expert witness was a real estate attorney admitted to practice law in the State of Texas. After reviewing the 1954 deed, the petition for the divorce of decedent and Ruth Climer, and the contract incident to divorce, petitioner's first expert witness concluded that in order to issue a title policy with respect to a transfer after decedent's death of the residence or of the farmland, the children would have to join the estate in the transfer. Petitioner's first expert witness concluded that at the time of decedent's death there was a cloud on the title of both the residence and the farmland that would negatively affect the value thereof. Petitioner's first expert witness did not express an opinion as to an appropriate discount. Petitioner's second expert witness was also a real estate attorney admitted to practice law in the State of Texas. After reviewing the 1954 deed, petitioner's second expert witness concluded that the children *48 had potential claims to the residence and to the farmland that could have resulted in litigation if an attempt to transfer the property had been made after decedent's death. Petitioner's second expert witness concluded that with respect to the residence and the farmland, a quiet title action would be necessary to transfer fee simple title. Petitioner's second expert witness did not express an opinion as to an appropriate discount. Petitioner's third expert witness was a professional appraiser and valuation expert who specializes in valuing property in Texas. Petitioner's third expert witness based his valuation in large part upon the reports and testimony of petitioner's other two expert witnesses. Petitioner's third expert witness did not visit either the residence or the farmland, nor did he examine comparable sales of similar property or even dissimilar property. Petitioner's third expert witness concluded that given the potential clouds on title, the full value of the residence and of the farmland should be discounted by 40 percent from the values reflected on the Federal estate tax return. We believe that at the time of decedent's death the potential for litigation with *49 respect to ownership of the residence and of the farmland was virtually nonexistent. The values reported by petitioner on decedent's estate tax return coincided with the appraisal given by Mr. Mills. We do not find the opinion of petitioner's experts persuasive enough to overcome the admissions as to value made by petitioner on decedent's estate tax return. See Estate of Hall v. Commissioner, 92 T.C. 312, 342 (1989); Estate of Pillsbury v. Commissioner, T.C. Memo. 1992-425. Having found that the 1954 deed was unambiguous and that the 1954 deed transferred a full fee simple title to decedent, we conclude that petitioner has not provided cogent evidence that, at the time of decedent's death, a discount in value is appropriate with respect to either the residence or the farmland. See Estate of Pillsbury v. Commissioner, supra; Estate of McGill v. Commissioner, T.C. Memo. 1984-292. We sustain respondent's determination as to the value of the residence and of the farmland. Decision will be entered under Rule 155. Footnotes
1. Petitioner has conceded respondent's disallowance of the sec. 2032A valuation reduction with respect to the farmland.↩