TEXAS COURT OF APPEALS, THIRD DISTRICT, AT AUSTIN






NO. 03-99-00871-CV






City of Austin, Appellant



v.



Irene H. Sandahl; Lisa S. Berdoll; and Scott D. Sandahl, Individually and as Trustee,


Appellees






FROM THE DISTRICT COURT OF TRAVIS COUNTY, 353RD JUDICIAL DISTRICT


NO. 98-13530, HONORABLE PAUL R. DAVIS, JR., JUDGE PRESIDING 







 The City of Austin appeals from a judgment declaring the rights and responsibilities
of parties to an agreement made in settlement of a previous lawsuit among the same parties. The
dispute in both actions concerns what development controls apply to a tract of real property owned
by appellees. (1) The record reflects protracted involvement relating to the tract over more than a
decade, culminating in the judgment below. The judgment declares (1) that the parties are bound
by the agreement that resolved the previous lawsuit, and (2) that, as set forth in the agreement,
development of the property is governed by the ordinances, rules, or other regulations in effect on
April 19, 1990. The city contends that the district court should have declared instead that appellees
failed to perform their obligations under the agreement, that the city validly terminated the
agreement, and that the tract is subject to later, more stringent development controls. We have
attempted to sort out the competing interests, legal positions, and confusing facts. We will reverse
the judgment and render judgment that the agreement does not govern the development of the tract.


BACKGROUND


 The tract at the center of this dispute is roughly fifty-one acres in Southwest Austin,
at the intersection of Brodie Lane and Slaughter Lane. It lies within the recharge zone of the
Edwards Aquifer. Concerns about the quality of the water in the aquifer have led the city to tighten
regulation of development of properties located in the recharge zone. Imposition of stricter
regulations has led to many disputes with affected landowners.

 In 1985, appellees requested that the city rezone the tract to allow family residential,
office, and retail uses. The city eventually did. Appellees submitted a preliminary subdivision plan
on April 19, 1990, which the city approved in August 1990. We will refer to the water quality
ordinance applicable then as the Comprehensive Watershed Ordinance ("CWO").

 Appellees had not developed the tract in August 1992 when the city enacted the
stricter development controls of the "Save Our Springs" ordinance ("SOS"). When appellees
requested in 1994 that the city release the site plan in the manner approved in 1990, the city declared
that the SOS restrictions applied, voiding the commercial site plan. Appellees filed suit to avoid
imposition of the SOS restrictions ("the 1994 lawsuit").

 On August 4, 1995, the city and appellees settled the 1994 lawsuit by written
agreement providing that the CWO would apply if appellees met certain conditions. Paragraph 2 of
their settlement agreement provides that the applications for development of the tract are "governed
solely" by the CWO unless another provision of the agreement "otherwise specifically provided[.]" 
Paragraph 7 of the agreement states that the parties agree to submit to the district court a joint motion
memorializing the agreement and dismissing the case. Appellees were to file the motion "after
Sandahl has, prior to December 31, 1995, submitted to the City a Consolidated Site Plan Permit
Application for [part of the tract] in accordance with the requirements as provided by Paragraph 2
of this Compromise Settlement Agreement and the City has timely issued said permit or permits." 
The agreement allows either party to terminate the agreement upon any default on the covenants of
Paragraph 7. The agreement also contains deadlines for filing a consolidated site plan for part of the
tract and later expiration dates for the consolidated site plans.

 Appellees submitted a site plan application on December 28, 1995. The city issued
a report on the application on February 23, 1996, noting eighty-two items needing correction before
the plan would comply with the CWO. The report stated, "The site plan will be approved when all
requirements identified in this report have been addressed. However, until this happens, your site
plan is considered disapproved." The city set a deadline of June 26, 1996 for the revisions; failure
to meet the deadline would result in automatic denial of the application. Though the deadline was
later extended to December 23, 1996, appellees never filed a revised application. Accordingly, the
city never issued permits, nor did the parties submit a motion to dismiss the 1994 lawsuit. The
district court, on its own motion, dismissed the 1994 lawsuit on June 10, 1997 for want of
prosecution.

 The controversy revived in late 1998 when appellees complained about city staff
telling prospective buyers of the tract that it was subject to the SOS ordinance. Appellees sent a
letter to the city, offering that, "[o]n your confirmation of intent to honor the substantive provisions
of the Settlement Agreement and accept site plan applications pursuant to paragraph 2 thereof,
[appellees] will agree to dismiss all claims they have against the City with prejudice." The city
responded by letter stating that it was no longer bound by the settlement agreement and that appellees
"should consider this letter notice of termination of the agreement." The city opined that the district
court's dismissal for want of prosecution nullified the agreement.

 Appellees then filed this suit requesting a declaratory judgment that the settlement
agreement continues to govern development of the tract and requesting other relief not relevant here. 
After the city filed a general denial, appellees moved for summary judgment on their requests for
declaratory relief. The city asserted in response to their motion that the city's termination of the
agreement barred appellees' requested relief. The city, in its own motion for summary judgment,
sought a declaration that appellees defaulted on the covenants of the agreement and that the city
terminated the agreement pursuant to the agreement's procedures; the city asserted that appellees
defaulted by failing to file a site plan application "in accordance" with the agreement and by failing
to tender a joint motion to dismiss. After a hearing on the cross-motions for partial summary
judgment, the district court granted appellees' motion, denied the city's motion, and declared that
the settlement agreement, and therefore the CWO, controlled development of the tract. Appellees
nonsuited their remaining claims, making the partial summary judgment final. This appeal ensued.



DISCUSSION


 The issue in this appeal is whether the city validly terminated the agreement for
appellees' failure to fulfill a covenant of the agreement. If the city validly terminated the agreement,
we must reverse the judgment; if the agreement remains in effect, we must affirm.

 Summary judgment is properly granted only when a movant establishes that there are
no genuine issues of material fact and that it is entitled to judgment as a matter of law. See Tex.
R. Civ. P. 166a(c); Memorial Med. Ctr. v. Howard, 975 S.W.2d 691, 692 (Tex. App.--Austin 1998,
pet. denied). We view the evidence in the light most favorable to the non-movant and make every
reasonable inference and resolve all doubts in favor of the non-movant. See Nixon v. Mr. Prop.
Mgmt. Co., 690 S.W.2d 546, 548-49 (Tex. 1985); Howard, 975 S.W.2d at 693. When both sides
move for summary judgment and the trial court grants one motion and denies the other, we review
both sides' summary judgment evidence and determine all questions presented. See Comm'rs Court
v. Agan, 940 S.W.2d 77, 81 (Tex. 1997); Jones v. Strauss, 745 S.W.2d 898, 900 (Tex. 1988). We
will render the judgment that the trial court should have rendered. See Agan, 940 S.W.2d at 81; 
Members Mut. Ins. Co. v. Hermann Hosp., 664 S.W.2d 325, 328 (Tex. 1984). 

 Interpretation of an unambiguous contract is a question of law suitable for summary
judgment. Asset Restructuring Fund, L.P. v. Liberty Nat'l Bank, 886 S.W.2d 548, 550 (Tex.
App.--Austin 1994, writ denied). A settlement agreement is a contract. See Padilla v. LaFrance,
907 S.W.2d 454, 461 (Tex. 1995). Even though the trial court did not approve the agreement and
dismiss the 1994 lawsuit pursuant to the agreement, it was valid and enforceable as between the
contracting parties. If an agreement has a certain or definite legal meaning or interpretation, then
it is not ambiguous and we will construe it as a matter of law. See Universal C.I.T. Credit Corp. v.
Daniel, 243 S.W.2d 154, 157 (Tex. 1951). Ambiguity does not arise simply because the parties
advance conflicting interpretations of the contract; rather, for an ambiguity to exist, both
interpretations must be reasonable. See Columbia Gas Transmission Corp. v. New Ulm Gas, Ltd.,
940 S.W.2d 587, 589 (Tex. 1996). A writing is ambiguous when application of the rules of
construction reveals genuine uncertainty about what the terms and provisions mean. See Daniel, 
243 S.W.2d at 157; see also Capitol Rod & Gun Club v. Lower Colo. River Auth., 622 S.W.2d 887,
894 (Tex. App.--Austin 1981, writ ref'd n.r.e.). 

 We must consider the entire instrument and try to harmonize its provisions. AT & T
Corp. v. Rylander, 2 S.W.3d 546, 559 (Tex. App.--Austin 1999, pet. denied). We must try to avoid
rendering inoperative any sentence, clause, or word. Balandran v. Safeco Ins. Co., 972 S.W.2d 738,
741 (Tex. 1998). The law disfavors forfeitures and will not declare a forfeiture unless compelled
to do so by language that can be construed no other way. See Reilly v. Rangers Mgmt., Inc., 727
S.W.2d 527, 530 (Tex. 1987); see also Hohenberg Bros. Co. v. George E. Gibbons & Co., 537
S.W.2d 1, 3 (Tex. 1976). We will avoid finding a forfeiture based on a condition precedent when
another reasonable reading of the contract is possible. Criswell v. European Crossroads Shopping
Ctr., Ltd., 792 S.W.2d 945, 948 (Tex. 1990).

 Before considering the substance of the contract, we must consider whether the city
is able procedurally to contend that appellees failed to fulfill their obligations under the contract. 
Appellees contend that the city, by failing to deny in its original answer that appellees performed
conditions precedent to the agreement, waived its right to complain about that failure on appeal. See
Tex. R. Civ. P. 54. Even if we assume that appellees' allegedly defaulted obligations were
conditions precedent, appellees, by not alerting the district court to any waiver by the city of the right
to raise the issue at summary judgment, in turn waived their right to complain on appeal about the
city's failure to make a specific denial. See Roark v. Stallworth Oil & Gas, Inc., 813 S.W.2d 492,
494 (Tex. 1991); Finley v. Steenkamp, 19 S.W.3d 533, 541 (Tex. App.--Fort Worth 2000, no pet.). 
Accordingly, we will consider the city's argument that appellees' default justified the city's
termination of the agreement.

 The termination provision appears in Paragraph 7 of the agreement:

 

 Sandahl and the City agree to submit to the Court in [the 1994 lawsuit] a Joint
Motion to the Court to enter the proposed Agreed Order in the form attached hereto
as Exhibit B. Sandahl and the City agree that Sandahl's attorney shall promptly
execute and deliver to the City Attorney the joint Motion requesting the Court to
enter an Agreed Order after Sandahl has, prior to December 31, 1995, submitted to
the City a Consolidated Site Plan Permit Application for all or any portion of the
41.1433 acre Sandahl/Brodie Section II platted portion of the subject property in
accordance with the requirements as provided by Paragraph 2 of this Compromise
Settlement Agreement and the City has timely issued said permit or permits. In the
event either party defaults on the covenants in this Paragraph, this Compromise
Settlement Agreement may be terminated by either party by written notice to the
other party.


Thus, if the failure to amend the rejected application constituted a default, the city had the option to
terminate the agreement.

 Whether the December 1995 application satisfied the agreement depends largely on
the meaning of the requirement that appellees submit a site plan application "in accordance with the
requirements" of Paragraph 2; that paragraph states that development of the tract would be governed
by the CWO. The city argues that the agreement must be read to require that the application
complied with the CWO. The city argues that, if the agreement is not read to require a compliant
application by the deadline, (2) appellees could have filed a plan with "utter indifference to" the CWO
by "doing nothing more than scratching out something on a piece of paper, labeling it as a
'consolidated site plan application' for the Brodie Lane property, and handing it to the City to do
with as it pleased." The city contends that an open-ended time for compliance is unreasonable. 
Appellees respond that Paragraph 7 must be read to require only that some kind of site plan be filed
by the deadline in order to fulfill the provision. They argue that the complexity of the application
process makes the filing of a perfectly compliant application on the first try virtually impossible. 
Appellees argue that to hold that the application had to be perfect by the original deadline would give
the city undue power over the success of the agreement; if the application had to be perfect by
December 31, 1995, the city could frustrate the agreement by waiting until after the deadline to find
the application imperfect. (3) Appellees argue that they did not cede that ultimate power to the city.

 We conclude that the meaning of this ambiguous agreement falls somewhere between
these extremes, but closer to the city's interpretation. The phrase "in accordance with" Paragraph
2 must mean satisfying the requirements of the CWO. Paragraph 2 states that the CWO governs
development. The CWO certainly requires that applications comply with the terms of the CWO. 
This reading, however, does not require a perfect application on the first try. The CWO also required
the city to consider updates to disapproved applications filed within 180 days after the filing of the
original application. See former Austin Land Dev. Code Ordinance §§ 13-1-641, 13-1-643(c)
(recodified at § 25-5-112(B)(1) & 25-5-113). It also allowed one 180-day extension of the update
period. See id. § 13-1-35(a) (recodified at § 25-1-88). If the time for updates expired without
approval, the application had to be denied. See id. §§ 13-1-22, 13-1-643 (recodified at §§ 25-1-21(25), 25-1-63(a)). Thus, though appellees had to file some type of application by December 31,
1995, the city had to allow them at least 180 days and perhaps more to file an acceptable application;
after the expiration of 360 days, however, the city had to deny the application.

 Despite appellees' arguments as to the many ways in which the city's view of
Paragraph 7 could cause compliance difficulty, those are not the facts here. The undisputed facts of
this case clearly show that appellees defaulted in their obligations under Paragraph 7. The only
evidence in the record reflects that their initial application did not comply with the CWO. Despite
having about ten months to update it after receiving the city's list of eighty-two deficiencies,
appellees never filed an updated application as the agreement required and apparently made no
attempt to do so; appellees therefore failed to file an application that accorded with the CWO.

 Appellees' default gave the city the option to terminate the agreement. (4) Appellees'
November 1998 offer to dismiss their claims with prejudice did not offset the failure of their
application to accord with the CWO. (5) The city waived nothing by its failure to exercise the
termination option until November 1998 because the agreement contains no stated expiration of the
right to terminate the agreement for default. 

 The city validly terminated the agreement. The termination clause requires written
notice of termination of the agreement to the other party. The city provided that notice in its
November 18, 1998 letter stating, "To the extent necessary, please consider this letter notice of
termination of the agreement by virtue of [appellees'] failure to meet the comments applicable to its
1995 site plan permit application, resulting in its expiration."

 We resolve the lone issue on appeal in favor of the city.


CONCLUSION


 In light of our conclusions, we must hold that the district court erred by finding that
the agreement--and through it, the CWO--governs development of the tract. The undisputed
summary-judgment evidence shows that the city validly terminated the agreement based upon
appellees' failure to file their application in accordance with the CWO. We reverse the district
court's judgment and render judgment that the agreement is no longer in force, having been validly
terminated by the city. 



 We declare that the terminated agreement does not govern development of the tract.



 Marilyn Aboussie, Chief Justice

Before Chief Justice Aboussie, Justices Kidd and B. A. Smith

Reversed and Rendered

Filed: May 17, 2001

Do Not Publish
1. Appellees are Irene H. Sandahl, Lisa S. Berdoll, and Scott D. Sandahl, individually and as
trustee. For convenience, we will refer to them collectively as appellees.
2. Whether the December 1995 deadline or the December 1996 deadline applies is irrelevant
to this appeal because appellees did not file an amended application by the extended deadline.
3. Indeed, in this case, the application was filed five days before the deadline, and the city did
not issue the report noting the application's eighty-two deficiencies until two months after the
application was filed.
4. The facts do not present appellees' nightmare scenario of the city withholding its approval
of a compliant application until deadlines pass. Had it occurred, though, appellees had a remedy. 
If appellees' application had complied with the CWO, the city was obligated to timely issue the
permits. There is, however, no evidence that the noted deficiencies were unfounded or that
appellees corrected them.
5. The default ultimately rendered performance of the latter obligations (including the city
granting the permits and appellees filing the motion to dismiss the suit with prejudice) impossible
by leading to the dismissal of the suit for want of prosecution.



here. The undisputed facts of
this case clearly show that appellees defaulted in their obligations under Paragraph 7. The only
evidence in the record reflects that their initial application did not comply with the CWO. Despite
having about ten months to update it after receiving the city's list of eighty-two deficiencies,
appellees never filed an updated application as the agreement required and apparently made no
attempt to do so; appellees therefore failed to file an application that accorded with the CWO.

 Appellees' default gave the city the option to terminate the agreement. (4) Appellees'
November 1998 offer to dismiss their claims with prejudice did not offset the failure of their
application to accord with the CWO. (5) The city waived nothing by its failure to exercise the
termination option until November 1998 because the agreement contains no stated expiration of the
right to terminate the agreement for default. 

 The city validly terminated the agreement. The termination clause requires written
notice of termination of the agreement to the other party. The city provided that notice in its
November 18, 1998 letter stating, "To the extent necessary, please consider this letter notice of
termination of the agreement by virtue of [appellees'] failure to meet the comments applicable to its
1995 site plan permit application, resulting in its expiration."

 We resolve the lone issue on appeal in favor of the city.


CONCLUSION