**Reversed and Remanded and Majority and Dissenting Opinions filed March 19, 2015.**



In The

# Fourteenth Court of Appeals

---

### NO. 14-13-00644-CV

---

**GRANT PRIDECO, INC. AND AGGREGATE PLANT PRODUCTS CO., Appellants**

**V.**

**EMPEIRIA CONNER L.L.C., EMPEIRIA CONNER II L.L.C., AUBREY CONNER, LEGG MASON SBIC MEZZANINE FUND, L.P., AEA MEZZANINE FUND, L.P., AEA MEZZANINE (UNLEVERAGED) FUND, L.P., PAUL FRONTIER HOLDINGS, L.P., JOE FIAMINGO, WES DEHAVEN, ALEX SUAREZ, AND EMPEIRIA CONNER L.L.C., IN ITS CAPACITY AS THE SELLER REPRESENTATIVE, Appellees**

---

**On Appeal from the 281st District Court
Harris County, Texas
Trial Court Cause No. 2012-71176**

---

# D I S S E N T I N G   O P I N I O N

The main issue in this appeal is whether the language of a contractual indemnity provision is ambiguous. Both sides say its meaning is clear, yet they

say it means different things. The trial court concluded that the defendants' interpretation is the unambiguous meaning of the provision. Today, the majority concludes that the plaintiffs' interpretation is the unambiguous meaning. None is correct. The provision's meaning is ambiguous.

### *Ambiguity forecloses summary judgment.*

When the meaning of a contractual provision is ambiguous, summary judgment is improper. Thus, the court should reverse the trial court's summary judgment and remand the case to the trial court so that the trier of fact may determine the true intent of the parties as to the scope of the indemnity provision. Only when a written instrument is worded so that it can be given a certain or definite legal meaning or interpretation, may the court properly construe it as a matter of law. *Lenape Res. Corp. v. Tenn. Gas Pipeline Co.*, 925 S.W.2d 565, 574 (Tex. 1996); *Dardas v. Fleming, Hovenkamp & Grayson, P.C.*, 194 S.W.3d 603, 611 (Tex. App.—Houston [14th Dist.] 2006, pet. denied). If the meaning of a disputed provision is uncertain and doubtful or if the provision is reasonably susceptible to more than one meaning, taking into consideration the circumstances present at the time of signing, then the provision is ambiguous and its meaning must be resolved by a finder of fact.[1] *See Lenape Res. Corp.*, 925 S.W.2d at 574.

In construing a written contract, our primary concern is to ascertain the true intentions of the parties as expressed in the written instrument. *See id.* We need not strain to embrace rules of construction that would avoid ambiguity at all costs. *See id.* If section 10.2(c) of the Stock Purchase Agreement ("Agreement") is ambiguous, then the trial court erred in granting summary judgment because the

---

[1] The record does not contain any evidence of circumstances present when the Stock Purchase Agreement was signed that would inform the inquiry as to whether the relevant language is ambiguous.

interpretation of an ambiguous contract is a question for the finder of fact. *See Coker v. Coker*, 650 S.W.2d 391, 394–95 (Tex. 1983). Although all parties argue that the relevant language is unambiguous, that does not prevent this court from concluding that the language is ambiguous. *See Watkins v. Krist Law Firm, P.C.*, No. 14-02-00291-CV, 2003 WL 21786173, at *3 (Tex. App.—Houston [14th Dist.] Aug. 5, 2003, pet. dism'd) (mem. op.). Therefore, the threshold inquiry is whether the following language in section 10.2(c) of the Agreement is ambiguous: "any Claims of Product Liability for which the facts, events and circumstances with respect to such Products Liability Claim first arose prior to the Closing Date."

Appellants/plaintiffs Grant Prideco, Inc. and Aggregate Plant Products Co. (hereinafter collectively the "Grant Prideco Parties") assert that the words "facts, events, and circumstances" have a broad meaning. The Grant Prideco Parties say that "fact" means "an actual occurrence," that an "event" is "something that happens," and that a "circumstances" is "a condition, fact, or event accompanying, conditioning, or determining another: an essential or inevitable concomitant." The Grant Prideco Parties argue that the indemnity provision requires the Empeiria Parties[2] to indemnify them because, "[b]ased on the plain meaning of these words, facts, events, and circumstances that relate to Mr. Lara's product liability claim arose before the Closing Date." By agreeing with the Grant Prideco Parties' interpretation of the provision, the majority concludes that this interpretation is certain and is the only reasonable interpretation of the indemnity language. *See Lenape Res. Corp.*, 925 S.W.2d at 574. It is not.

---

[2] Appellees/defendants Empeiria Conner L.L.C., Empeiria Conner II L.L.C., Aubrey Conner, Legg Mason SBIC Mezzanine Fund, L.P., AEA Mezzanine Fund, L.P., AEA Mezzanine (Unleveraged) Fund, L.P., Paul Frontier Holdings, L.P., Joe Fiamingo, Wes Dehaven, Alex Suarez, and Empeiria Conner L.L.C., in its capacity as the seller representative are referred to in this opinion collectively as the "Empeiria Parties."

### *Unpacking the contractual language leaves the meaning unclear.*

The everyday words "facts," "events," and "circumstances" are not defined in the Agreement. Nothing in the Agreement suggests that these ordinary words are used in a technical sense or in any way other than to convey their ordinary and generally accepted meaning, so we must give these words that meaning. *See Valence Operating Co. v. Dorsett*, 164 S.W.3d 656, 662 (Tex. 2005). The phrase "the facts, events and circumstances with respect to such Products Liability Claim" (hereinafter "Facts Phrase") has a broad scope that would encompass the allegedly actionable conduct that is the basis of the Products Liability Claim, the harm or injury allegedly sustained as a result of that conduct, and other facts, events, and circumstances with respect to such a claim. But, the use of the words "the" and "and" in the Facts Phrase suggests that it may mean "all of the facts, events and circumstances with respect to such Products Liability Claim" rather than simply any of the facts, events, or circumstances relating to a claim.

Construing the scope of this indemnity is made tough by the parties' use of the phrase "first arose."[3] In the context of this indemnity provision, the plain, ordinary, and generally accepted meaning of "first arose" is "first came into being."[4] *See* Merriam Webster's Collegiate Dictionary 66 (11th ed. 2004) (defining in pertinent part "arise" to mean "to come into being or to attention"); *id*. 68

---

[3] The majority cites several cases construing the phrase "arising out of," but the provision does not contain this phrase.

[4] The Empeiria Parties assert that, though the word "accrual" does not appear in the Agreement, a synonym for "accrue" is "arise," which is the present tense of "arose." Presuming that "arise" is a synonym for "accrue," this status does not change the function of the phrase "first arose" as modifying the Facts Phrase, not the phrase "any Claims of Product Liability." Nor does the arise-means-accrue construct mean that the parties agreed that the scope of the indemnity would be "any Claims of Product Liability for which the facts, events and circumstances with respect to such Products Liability Claim first accrued prior to the Closing Date." In any event, this language is not any clearer than the language contained in section 10.2(c) of the Agreement.

(stating that "arose" is the past tense "arise"). Whatever its scope, the Facts Phrase contains elements that happen at different points in time. Therefore, the meaning of "the facts, events and circumstances . . . first arose" is uncertain. The use of the phrase "first arose" indicates a look into the past to determine when the subject came into being. But, if the subject is a set of facts, events, and circumstances that came into being over a span of time, it is unclear how one can determine when that subject came into being. The parties may have intended to refer to the point in time in which the first fact, event, or circumstance with respect to the claim came into being. If so, that raises the issue of the scope of the Facts Phrase. If an inventor first gets the idea for a product, it may be decades before the first product is ever sold, and even longer before the use of that product ever causes a harm or injury that may be the basis of a product-liability claim. If an APPCO employee had an idea for a product in April 2011, and if one of those products were sold in 2026, and an alleged defect in the product allegedly caused serious personal injury in 2036, would the idea for the product constitute a fact, event, or circumstance with respect to a product-liability claim based on that personal injury so that the claim falls within the scope of the indemnity?[5]

Even if the idea for the product is not within the scope of the Facts Phrase, it is not clear why the first instance of conduct alleged by the product-liability plaintiff to be actionable would not fall within the scope of this phrase. If it does,

---

[5] The Grant Prideco Parties and the Empeiria Parties both assert that, under section 10.1 of the Agreement, written notice of section 10.2(c) indemnity claims must be made within eighteen months of the Closing Date. Nonetheless, an indemnity claim under section 10.2(c) falls under the unambiguous language of section 10.1(c), and therefore, written notice of such indemnity claims may be provided at any time until the applicable statute of limitations expires. The Grant Prideco Parties provided written notice of their indemnity claims under the Agreement within eighteen months of the Closing Date and before the expiration of the applicable statute of limitations. In any event, even if written notice of section 10.2(c) indemnity claims had to be provided within eighteen months of the Closing Date, that requirement would not make the scope of the indemnity under section 10.2(c) unambiguous.

5

and if the phrase "first arose" refers to the first fact, event, or circumstance in this phrase to come into being, then at least some of Lara's claims would fall within the scope of the indemnity under section 10.2(c) of the Agreement.

Nonetheless, the use of "first arose," even though the phrase does not modify "any Claims of Product Liability" still may have been intended to refer to the accrual of the "Claim of Product Liability" in question. The Empeiria Parties argue that the language of section 10.2(c) is unambiguous and covers only "claims that had arisen prior to the closing date." Yet, the Empeiria Parties do not address what meaning, if any, should be given to the word "first." In addition, as the Grant Prideco Parties note, the Empeiria Parties' construction effectively gives no meaning to the words in the Facts Phrase. The parties may have intended "first arose prior to the Closing Date" to modify the Facts Phrase in a way that achieves the same scope of the indemnity that the Empeiria Parties push, but any such intent is unclear. One could hardly say that this scope is communicated by unambiguous language in the Agreement. None of the cases the parties cite involve the unusual language the parties put in section 10.2(c), so these cases do not compel the conclusion that the relevant language is unambiguous. The parties have not cited and research has not revealed any cases in which a court construes the same or similar contract language. Nor has the majority cited any such cases.

The meaning of the Agreement as to the scope of the indemnity obligation under section 10.2(c) is uncertain and doubtful or it is reasonably susceptible to more than one meaning. *See Lenape Resources Corp.,* 925 S.W.2d at 574 (holding contract provision to be ambiguous); *Coker,* 650 S.W.2d at 393-94 (holding that contract language was unclear and ambiguous); *Watkins*, 2003 WL 21786173, at *3 (holding that contract language was uncertain, doubtful, and ambiguous); *A.W. Wright & Associates, P.C. v. Glover, Anderson, Chandler &*

6

*Uzick, L.L.P.,* 993 S.W.2d 466, 470 (Tex. App.—Houston [14th Dist.] 1999, pet. denied) (holding that language in contracts was uncertain and doubtful and therefore ambiguous); *Gibson v. Bentley,* 605 S.W.2d 337, 338–39 (Tex. Civ. App.—Houston [14th Dist.] 1980, writ ref'd n.r.e.) (holding that condition triggering provision was susceptible of two irreconcilable interpretations and was ambiguous). Therefore, the trial court erred in granting in part the Empeiria Parties' summary-judgment motion, but the trial court did not err in denying the Grant Prideco Parties' summary-judgment motion regarding indemnity liability under section 10.2(c) of the Agreement. *See Coker,* 650 S.W.2d at 394–95.

### ***Because the contractual language is unclear, the fact finder should determine what it means.***

The scope of the indemnity obligation under section 10.2(c) is ambiguous. Because the meaning of the provision is unclear, this court should affirm the portion of the trial court's judgment denying the Grant Prideco Parties' motion for partial summary judgment, reverse all parts of the trial court's judgment in which the trial court granted the Empeiria Parties' summary-judgment motion, and remand the case to the trial court so that the trier of fact may determine the true intent of the parties as to the scope of the indemnity obligation under section 10.2(c) of the Agreement. Because the majority concludes that section 10.2(c) is unambiguous and that the meaning of the provision may be determined as a matter of law, I respectfully dissent.


/s/    Kem Thompson Frost
Chief Justice


Panel consists of Chief Justice Frost and Justices Jamison and Wise (Jamison, J., majority).

7